

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-1-2000

# USA v. McGlory

Precedential or Non-Precedential:

Docket 97-3057

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"USA v. McGlory" (2000). *2000 Decisions.* Paper 15.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/15

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 1, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-3057

UNITED STATES OF AMERICA

v.

REGINALD MCGLORY,
        Appellant

On Appeal from the United States District Court
For the Western District of Pennsylvania
(D.C. Crim. No. 89-cr-00144)
District Judge: The Honorable D. Brooks Smith

Originally Argued April 5, 1999
Before: SLOVITER and ALITO, Circuit Judges,
ALARCON, Senior Circuit Judge*

Argued en banc November 8, 1999

Before: BECKER, Chief Judge, SLOVITER, MANSMANN,
GREENBERG, SCIRICA, NYGAARD, ALITO, ROTH,
MCKEE, RENDELL, and BARRY, Circuit Judges

(Filed February 1, 2000)

        Michael A. Young (Argued)
        165 Christopher Street
        New York, NY 10014

         Attorney for Appellant
_____

* Hon. Arthur L. Alarcon, Senior Judge, United States Court of Appeals
for the Ninth Circuit, sitting by designation when this case originally
was
argued April 5, 1999.

          Mary Houghton
           Assistant United States Attorney
          Harry Litman (Argued)
           United States Attorney
          Bonnie R. Schlueter
           Assistant United States Attorney
          633 United States Post Office and
           Courthouse
          Pittsburgh, PA 15219

           Attorneys for Appellee

OPINION OF THE COURT

SLOVITER, Circuit Judge.

The issue before the en banc court in this case is whether the appellant Reginald D. McGlory received constitutionally adequate notice for the administrative forfeiture of certain property seized by officers of the Drug Enforcement Administration ("DEA").

McGlory was arrested, tried, convicted, and sentenced to life imprisonment for various drug and firearm offenses. Incident to his arrest various of his property was seized and most of the seized property, but apparently not all, was subjected to administrative or judicial forfeiture by the DEA. McGlory first challenged the forfeiture byfiling a motion for return of property pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure. Before we can consider the adequacy of the particular administrative forfeiture notices that are the subject of this appeal,[1] we must decide whether the District Court had jurisdiction to consider McGlory's Rule 41(e) motion. Only if it had can we consider the important, albeit narrow, issue whether

_____

1. Also before the en banc court are consolidated appeals in United States v. One Toshiba Color Television, Two Answering Machines, and One Health Tech Computer, No. 98-3578, and United States v. Assorted Jewelry, No. 98-3579. Although those appeals involve the identical parties and similar fact patterns as the present appeal, they raise distinct legal issues and will be addressed hereafter in a separate opinion.

adequate notice of administrative forfeiture proceedings is provided to a prisoner who is in local detention facilities by mailing the notices to an office of the United States Marshals Service.

I.

On September 8, 1989, DEA agents and local Pittsburgh officers arrested McGlory for conspiracy to possess heroin with intent to distribute. At that time, and pursuant to search warrants, the officers seized property, including cash, from McGlory's apartment at 236 South Negley Avenue in Pittsburgh, Pennsylvania, his mother's home at 4267 Bryn Mawr Road in Pittsburgh, Pennsylvania, and his wife's residence at 285 Suncrest Drive in Verona, Pennsylvania. On September 15, 1989, the Magistrate Judge ordered that McGlory be detained by the United States Marshals Service pending trial. By arrangement between federal and state authorities, federal pretrial detainees are often housed in state detention facilities.

McGlory was indicted by a federal grand jury on October 4, 1989. He was charged with possession of a firearm after having been convicted of a felony, conspiracy to distribute heroin, and possession of heroin with intent to distribute. McGlory pled not guilty, and the court ordered a trial by jury to begin December 11, 1989, which was later continued to February 20, 1990.

On December 13, 1989, the government filed a superseding indictment which added additional criminal charges against McGlory. McGlory was arraigned on the superseding indictment on December 21, 1989. He again pled not guilty to each charge. McGlory's trial began on April 25, 1990. On May 16, 1990, the jury returned its verdict finding McGlory guilty of each of the charges set forth in the superseding indictment.

McGlory was sentenced on February 11, 1991 and was remanded to the custody of the Bureau of Prisons less than two weeks later. He therefore remained in the custody of the United States Marshals Service from the date of his arrest on September 8, 1989 until February 22, 1991, almost all of that time as a pretrial detainee. McGlory has

3

stated that during this time he was housed in various pretrial detention facilities, but neither he nor the government introduced evidence of the facilities in which he was confined or the dates of his confinement at each facility. This court has reviewed the record of McGlory's criminal trial and finds references to McGlory's initial detention on September 11, 1989 and thereafter on December 11, 1989 in Hancock County Jail, West Virginia, which suggests that he was detained there during that period. This encompasses the relevant period for the purpose of this appeal. We note other references that suggest that from approximately May 18, 1990 until at least August 2, 1990 he was housed in Fayette County Jail, Uniontown, Pennsylvania. By November 9, 1990, he had been moved to the Ohio County Jail in Wheeling, West Virginia. Since February 22, 1991, he has been in a federal prison designated by the Bureau of Prisons serving his term of life imprisonment. See 18 U.S.C. S 3621(a) and (b).

Before McGlory's criminal trial began, and during the time McGlory was in the custody of the United States Marshals Service, the DEA initiated administrative forfeiture proceedings regarding the property covered by DEA seizure numbers 52425 ($8,800 cash), 65613 (assorted clothing), 65615 (Louis Vuitton luggage), 2 66651 (Louis Vuitton luggage/briefcase), 65323 (miscellaneous jewelry), and 67065 (cellular phone).3

The DEA provided notice of these administrative forfeiture proceedings by three methods. One was by published notice in a newspaper of general circulation. The DEA also sent notice by certified mail, return receipt

_____

2. The luggage is misnamed throughout the record as Louis Vitton. The brand name is well known and the accurate name is Louis Vuitton.

3. The government also initiated administrative forfeiture proceedings regarding eleven other DEA seizure numbers: 64582, 68735, 73402, 68730, 68719, 68727, 64563, 68740, 68729, 68743, and 72090. The government contends that the property listed at these seizure numbers was seized from individuals other than McGlory, and McGlory does not contend otherwise in this appeal. In addition, one other administrative forfeiture (66645) involved a Nissan automobile that has been returned to the lienholder, and McGlory did not list this among the seizure numbers challenged on appeal. See Appellant's Brief at 4.

4

requested, to McGlory's last known address at 236 S. Negley Avenue, Pittsburgh, Pennsylvania, and his mother's residence at 4267 Bryn Mawr Road, Pittsburgh, Pennsylvania. Finally, the DEA sent notice by certified mail, return receipt requested, addressed to McGlory to or in care of the United States Marshals Service at the federal courthouse located at 7th and Grant Street, Pittsburgh, Pennsylvania. Those notices were mailed between September 26, 1989 and November 15, 1989. McGlory claims that he received none of these notices. The government has made no attempt to show otherwise.

McGlory did not take steps for the return of the property seized until April 11, 1994 when he filed a pro se motion under Rule 41(e) for the return of the seized property. This was after the completion of the criminal trial proceedings on February 11, 1991. On February 3, 1995, the District Court referred McGlory's Rule 41(e) motion for the return of the seized property to a Magistrate Judge for a report and recommendation. While the matter was pending, this court decided United States v. $184,505.01 In U.S. Currency, 72 F.3d 1160 (3d Cir. 1995), another challenge by McGlory to different forfeitures, where we held that the notice given to McGlory in two of three judicial forfeiture proceedings did not satisfy due process. On December 17, 1996, the Magistrate Judge filed his report recommending that McGlory's Rule 41(e) motion be denied without prejudice to the judicial forfeiture actions. On December 30, 1996, before the District Court ruled on the Report and Recommendation, McGlory's counsel filed a motion for permission to file an amended Rule 41(e) motion and to stay any further proceedings on McGlory's pro se Rule 41(e) motion.

On January 3, 1997, the District Court determined that the Magistrate Judge "correctly denied the Rule 41(e) motion" and ordered that "the plaintiff 's Rule 41(e) motion is dismissed without prejudice to the pending civil forfeiture actions." United States v. McGlory, No. 89–144, Slip op. at 1, 4 (W.D. Pa. Jan. 3, 1997). The court opined that "[t]he administrative forfeiture proceedings did not suffer from the same defective notice problem as the judicial forfeiture proceedings, see United States v. $184,505.01 In U.S.

5

Currency, 72 F.3d 1160 (3d Cir. 1995), since petitioner was personally served with notice of those actions." Id. at 2 (emphasis added). The court did not explain what constituted the "personal service" on McGlory to which it referred, nor did it expressly rule on McGlory's motion to file an amended Rule 41(e) motion.

On January 13, 1997, McGlory, through counsel, filed a motion for reconsideration of the January 3, 1997 order denying his Rule 41(e) motion. On January 14, 1997, he filed a notice of appeal from that same order without waiting for any order from the District Court. We stayed the appeal pending resolution of the motion for reconsideration, which the District Court denied on September 22, 1998, when it also adopted the Magistrate Judge's Report and Recommendation on a wide range of issues relating to the forfeitures. Both parties assume that we have jurisdiction to review the District Court's order of September 22, 1998. We do not. McGlory only appealed the January 3, 1997 order.

The Federal Rules of Civil Procedure do not specifically refer to a motion to reconsider but such motions, if filed within ten days of judgment, are generally treated as motions to alter or amend judgment under Rule 59(e) of the Federal Rules of Civil Procedure. See Federal Kemper Ins. Co. v. Rauscher, 807 F.2d 345, 348 (3d Cir. 1986); Campbell v. Bartlett, 975 F.2d 1569, 1580 n.15 (10th Cir. 1992). We therefore analyze McGlory's motion to reconsider, which was timely, as though he had filed it under Rule 59(e).

Federal Rule of Appellate Procedure 4(a) provides that a notice of appeal filed before the disposition of one of the motions specified in Rule 4(a)(4)(A), including a Rule 59(e) motion, will become effective upon entry of the order disposing of the motion. Because McGlory filed his notice of appeal from the court's January 3, 1997 order while the Rule 59(e) motion was pending, the notice of appeal became effective on September 22, 1998 -- the date the District Court entered its order denying that motion. See Fed. R. App. P. 4(a)(4)(B)(i). However, in order to contest the denial of a Rule 59(e) motion, a new or amended notice of appeal must be filed. Thus, when the District Court denied

6

McGlory's Rule 59(e) motion on September 22, 1998, McGlory could proceed with his appeal of the January 3, 1997 order denying his Rule 41(e) motion without further filing, but if he wanted the appeal to encompass any challenge to the order of September 22, 1998, he was required to file an amended notice of appeal. See Fed. R. App. P. 4(a)(4)(B)(ii). He failed to do so.

Patently, McGlory's original notice of appeal from the January 3, 1997 order could not confer jurisdiction over the District Court's September 22, 1998 order denying reconsideration. See United States v. Rivera Construction Co., 863 F.2d 293, 298 (3d Cir. 1988) ("However, where the order or judgment upon which the appellant seeks review is neither directly nor indirectly referred to in the notice of appeal, then the issue is not fairly raised and the Court of Appeals does not acquire jurisdiction.") (internal quotation omitted). We therefore must limit our review to the merits of the January 3, 1997 order denying McGlory's Rule 41(e) motion. It follows that the District Court's disposition of certain issues (such as laches) in its Memorandum Order of September 22, 1998, adopting the Report and Recommendation of the Magistrate Judge, is not properly before us.

II.

The government states in its brief that "[t]he district court may have lacked subject-matter jurisdiction over the entire claim." United States Brief at 19. As we understand the government's position, it is that jurisdiction may be lacking both because McGlory's challenge is to an administrative forfeiture and because McGlory's motion was filed after the completion of the underlying criminal proceedings. We have not previously considered whether a district court lacks jurisdiction over a Rule 41(e) motion on either of these grounds.

Rule 41(e) provides:

> A person aggrieved by an unlawful search and seizure or by the deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that such

person is entitled to lawful possession of the property. The court shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted, the property shall be returned to the movant. . . .

Fed. R. Crim. P. 41(e).

McGlory's Rule 41(e) motion requested that the government return property seized from him and forfeited by the DEA in administrative and judicial proceedings,[4] as well as property seized from him for which no forfeiture proceedings had been instituted and for which the government has failed to provide an accounting.

The civil forfeiture of property that constitutes the proceeds of drug transactions is authorized by 21 U.S.C. S 881(a).[5] When the seized property is $500,000 or less, the government may use the administrative forfeiture process governed by the customs laws; this process entails no judicial involvement. See 19 U.S.C. S 1607;[6] 21 U.S.C.

_____

4. In this appeal, McGlory has not renewed his challenge to the notice provided in the judicial forfeiture proceedings, although that issue is before the court in the related appeals referred to in note 1 supra.

5. Section 881(a) provides in pertinent part:

The following shall be subject to forfeiture to the United States and
no property right shall exist in them . . .

(6) All moneys, negotiable instruments, securities, or other things of
value furnished or intended to be furnished by any person in
exchange for a controlled substance or listed chemical in violation of
this subchapter, all proceeds traceable to such an exchange, and all
moneys, negotiable instruments, and securities used or intended to
be used to facilitate any violation of this subchapter. . . .

6. Section 1607 provides:

If . . . the value of such seized vessel, vehicle, aircraft, merchandise,
or baggage does not exceed $500,000 [,]. . . the appropriate customs
officer shall cause a notice of the seizure of such articles and the
intention to forfeit and sell or otherwise dispose of the same

according to law to be published for at least three successive weeks in such manner as the Secretary of the Treasury may direct. Written notice of seizure together with information on the applicable procedures shall be sent to each party who appears to have an interest in the seized article.

8

S 881(d).7 The government is required to publish notice of its intent to forfeit the property once a week for three weeks and to send written notice to any party known to have an interest in the property. See 19 U.S.C.S 1607(a). If a claimant files a claim and a cost bond within 20 days after the first publication, the administrative process is halted and the seizing agency must turn the matter over to the United States Attorney to commence a judicial forfeiture proceeding, see 19 U.S.C. S 1608, which is the procedure automatically followed for property valued over $500,000. See 19 U.S.C. S 1610. If a claimant fails to file the bond to contest the forfeiture, the seizing agency will make a declaration of forfeiture and title will vest in the United States. See 19 U.S.C. S 1609(a). This administrative declaration has the same effect as a final decree and order of forfeiture entered in a judicial proceeding. See 19 U.S.C. S1609(b).

A district court ordinarily lacks jurisdiction to review the DEA's administrative forfeiture proceedings. See Linarez v. United States Dep't of Justice, 2 F.3d 208, 212 (7th Cir. 1993) ("[O]nce the government initiates an administrative forfeiture proceeding and the property is not the subject of an ongoing criminal proceeding, the district court loses jurisdiction to resolve the issue of return of property."). However, "the federal courts have universally upheld

_____

7. Section 881(d) states:

> The provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws; the disposition of such property or the proceeds from the sale thereof; the remission or mitigation of such forfeitures; and the compromise of claims shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under any of the provisions of this subchapter, insofar as applicable and not inconsistent with the provisions hereof; except that such duties as are imposed upon the customs officer or any other person with respect to the seizure and forfeiture of property under the customs laws shall be performed with respect to seizures and forfeitures of property under this subchapter by such officers, agents, or other persons as may be authorized or designated for that purpose by the Attorney General, except to the extent that such duties arise from seizures and forfeitures effected by any customs officer.

9

jurisdiction to review whether an administrative forfeiture satisfied statutory and due process requirements." United States v. Woodall, 12 F.3d 791, 793 (8th Cir. 1993) (citing cases).

Some courts have found equity jurisdiction appropriate to review a claimant's challenge to the sufficiency of the notice on the theory that a claimant who received inadequate notice lacked an adequate remedy at law. See United States v. Claggett, 3 F.3d 1355, 1356 (9th Cir. 1993) (reasoning that "[i]f notice of the pending forfeiture was inadequate, . . . then the forfeiture proceeding was never available to [the claimant] in any meaningful sense."); Sarit v. U.S. Drug Enforcement Admin., 987 F.2d 10, 17 (1st Cir. 1993) ("Whereas most challenges to forfeiture would be foreclosed by . . . failure to utilize [the statutory mechanism], courts have entertained challenges to the adequacy of notice, reasoning that the mechanism is not available to a plaintiff who is not properly notified of the pending forfeiture.").

Further, those courts which have allowed limited judicial review of an administrative forfeiture proceeding on due process grounds have also ruled that a Rule 41(e) motion filed after criminal proceedings have terminated is an acceptable means of obtaining review. For example, the Court of Appeals for the First Circuit has held that "[w]here criminal proceedings against the movant have already been completed, a district court should treat a rule 41(e) motion as a civil complaint." United States v. Giraldo, 45 F.3d 509, 511 (1st Cir. 1995) (internal quotation omitted). Other courts have agreed. See Weng v. United States , 137 F.3d 709, 711 n.1 (2d Cir. 1998) (same); United States v. Clark, 84 F.3d 378, 381 (10th Cir. 1996) (same); Woodall, 12 F.3d at 794 n.1 (holding that a Rule 41(e) motion filed by a pro se plaintiff after criminal proceedings have ended should be liberally construed as seeking to invoke the proper remedy); United States v. Martinson, 809 F.2d 1364, 1366–67 (9th Cir. 1987) (holding that a district court has jurisdiction over a motion to return property styled as a Rule 41(e) motion, and should treat such motion as a civil equitable proceeding).

We find the reasoning of these cases persuasive and now hold that a district court has jurisdiction to consider a

10

claim that a person received inadequate notice of completed administrative forfeiture proceedings, notwithstanding that the claim was styled as a Rule 41(e) motion andfiled after criminal proceedings had been completed. Accordingly, we conclude that the District Court had jurisdiction to consider McGlory's claim that he received inadequate notice of the DEA's administrative forfeiture proceedings.

III.

We thus turn to the narrow issue before us on this appeal: whether a pretrial detainee in custody of the Marshals Service has a due process right to have notice of administrative forfeiture proceedings mailed by the forfeiting agency directly to the pretrial detainee at the institution where s/he is being housed. The procedure followed by the DEA in this case, and apparently its general practice, was to mail a notice addressed to the detainee to or care of the Marshals Service at its office in the Pittsburgh courthouse, a practice that McGlory contends does not comport with due process.

The government argues that due process was satisfied by sending the notices to the Marshals Service because under the Service's standard office procedure "any correspondence addressed to a person in custody . . . [was] forwarded . . . to the intended recipient, at his place of confinement, by first class mail, postage prepaid." Declaration of Gary Richards, Chief Deputy, United States Marshals Service, App. at 104. McGlory argues, in contrast, "that in order to satisfy constitutional requirements, the DEA was required to address the certified mail containing the notices to [McGlory] at the prison where the government was confining him." McGlory's Reply Br. at 7-8; see also McGlory's Opening Br. at 19-20.8 Thus the parties are

_____

8. Because McGlory has not contended in his brief on this appeal that due process required more of the government than sending certified mail, return receipt requested, to him at his place of confinement, we are not faced with the issue before the court in United States v. Assorted Jewelry, No. 98-3579, namely, whether the government must ensure actual notice or take additional steps to increase the likelihood of actual
notice, to prisoners in its custody. See Commonwealth of Pennsylvania Dep't of Public Welfare v. United States Dep't of Health & Human Servs., 101 F.3d 939, 945 (3d Cir. 1996) (argument not properly raised in brief is deemed waived on appeal).

11

joined on the issue whether the government has fulfilled its responsibility under the Due Process Clause to give reasonable notice under the circumstances by relying on the Marshals Service to forward notice to the detainee when the government, in whose custody the detainee is committed, is uniquely well situated to ascertain the detainee's whereabouts.

The District Court did not meet this issue directly in its order of January 3, 1997, the only order properly before us, as it found that McGlory was personally served with notice of the administrative forfeitures. McGlory has consistently maintained that he was not personally served; further, even the government does not contend that McGlory was "personally served" (the language used by the District Court) by delivery to him. Although the DEA's notices were sent to the Marshals Service certified mail, return receipt requested, the Marshals Service allegedly remailed them by first class mail to McGlory at the prison where he was detained. As previously noted, the government has not produced any return receipts signed by McGlory.

The statute governing administrative forfeitures requires, in addition to notice by publication, "[w]ritten notice . . . to each party who appears to have an interest in the seized article." 19 U.S.C. S 1607(a). That this notice must be one that satisfies the Due Process Clause is beyond peradventure. A half century ago, the Supreme Court declared that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

Twenty-three years later, in Robinson v. Hanrahan, 409 U.S. 38 (1972), the Court addressed the question whether a notice of forfeiture, mailed to a prisoner's home address by the government entity in whose custody the prisoner was held, was constitutionally sufficient. In a brief, per curiam opinion, the Court, repeating the language from Mullane quoted above, held that it was not:

12

In the instant case, the State knew that appellant was not at the address to which the notice was mailed and, moreover, knew also that appellant could not get to that address since he was at that very time confined in the Cook County jail. Under these circumstances, it cannot be said that the State made any effort to provide notice which was `reasonably calculated' to apprise appellant of the pendency of the forfeiture proceedings.

Id. at 40. In so ruling, the Court suggested that the notice provided "with respect to an individual whose name and address are known or easily ascertainable," id., must be such notice that can be put to practical use. It cited its earlier decision in Covey v. Town of Somers, 351 U.S. 141 (1956), where it held that even mailing of a notice of foreclosure was inadequate if the individual involved was incompetent and without the protection of a guardian. Consistent with the principle enunciated in these cases, the Court stated in Mennonite Board of Missions v. Adams, 462 U.S. 791, 800 (1983), that "[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party . . . if its name and address are reasonably ascertainable." (emphasis omitted).

We took guidance from these cases in United States v. $184,505.01 in U.S. Currency, 72 F.2d 1160 (3d Cir. 1995), a case involving an earlier set of forfeitures of other of McGlory's property. In that case, the government sent notices to McGlory's last known address but made no attempt to reach him at his place of confinement. We held this attempt inadequate under Robinson and Mennonite Board, stating, "McGlory argues, in our view persuasively, that Robinson and Adams together required that the government at least make an attempt to serve him with notice of the forfeiture proceedings in prison." Id. at 1163 (emphasis added). Robinson alone should be dispositive of the issue in this case.

The government cites no authority, and we are aware of none, that suggests that the forfeiting agency may delegate its responsibility by mailing notice to the Marshals Service

13

in Pittsburgh when the forfeiting agency is aware that the intended recipient is confined elsewhere. Even assuming arguendo that mailing the notices to the Marshals Service is more likely to reach the prisoner than mailing them to his last known address, the defect in $184,505.01, it is still inadequate when the government department or agency responsible for giving notice, here the DEA, knows or can quickly and easily obtain the place where the prisoner is confined.

The constitutional imperative derived from Mullane and Robinson and their progeny plainly suggests that in order to give notice that meets the requirement of due process, the agency responsible for sending notice must, at least in the first instance, address and direct notice to the detainee at his place of confinement. This hardly imposes an onerous burden as the DEA did in fact mail notices to McGlory. Its deficiency was in not mailing them to McGlory's place of confinement. Rather than the two step process followed here, which entailed mailing McGlory's notices to the Marshals Service in Pittsburgh and relying on it to remail them to McGlory at the institution where he was then detained, the DEA could have ascertained McGlory's whereabouts at the relevant time from the Marshals Service (which acts as the locator for all persons in federal custody) and mailed its notices to him directly.

It is not a novel proposition to hold that due process requires that notice to prisoners be directed and mailed to the prisoner where detained. Numerous decisions by other courts of appeals so hold. See, e.g., Weng v. United States, 137 F.3d 709, 714 (2d Cir. 1998) ("Absent special justifying circumstances, the least that can be asked . . . is that [the forfeiting agency] determine where the claimant is detained and send the notice to the right institution."); United States v. Clark, 84 F.3d 378, 381 (10th Cir. 1996) ("When the government is aware that an interested party is incarcerated, due process requires . . . an attempt to serve him with notice in prison."); Torres v. $36,256.80 U.S. Currency, 25 F.3d 1154, 1161 (2d Cir. 1994) ("[I]f the DEA had desired to give [claimant] actual notification, a simple call to the Bureau of Prisons would have sufficed to reveal where [he] was serving his sentence."). Cf. United States v.

14

Real Property, 135 F.3d 1312, 1316 (9th Cir. 1998) (rejecting due process challenge when notice was sent, inter alia, to institution where claimant was confined).

The government also argues that because pretrial detainees are often moved between detention facilities and McGlory could have been moved after the DEA ascertained his whereabouts and sent the mail, "sending notice via the Marshals Service was the most reasonable and efficient means available for the DEA to provide McGlory with actual notice of its administrative actions." United States brief at 23. Even if we assume that the Marshals Service actually followed its policy and remailed the notices, and the government introduced no such evidence, using the Marshals Service as a conduit for forfeiture notices may exacerbate rather than cure the problem it was designed to solve. McGlory could have been moved after the Marshals Service itself sent the mail. And adding the Marshals Service in the chain of mailers duplicates the number of agencies handing the mail, thereby increasing the possibility of error, and doubles the time until his receipt which is hardly a more reasonable attempt at service than mailing the notices directly to the detainee in thefirst place.

There is no suggestion in this case that McGlory was moved about with such rapidity that it would not have been possible for mail to catch up with him. All of the administrative forfeiture notices at issue here were mailed between September 26 and November 15, 1989. What little record evidence there is suggests that McGlory was not moved during this time and that at least the U.S. Attorney's office knew where McGlory was for at least part of that time. See Case Information Reports filed by U.S. Attorney William Conley on October 4, 1989 and December 11, 1989, listing McGlory's place of confinement as Hancock County Jail.

Moreover, the DEA did not even make an attempt to reach him at his place of confinement, as we held was required in $184,505.01, 72 F.3d at 1163. Due process does not require an infallible method of giving notice. But before relying on the Marshals Service policy, which apparently failed in these six instances, the DEA had at

15

hand a method more "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." Mullane, 339 U.S. at 314. As the Supreme Court in Mullane stressed, "when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." 339 U.S. at 315. One who was "desirous of actually informing" McGlory would have taken the time to ascertain the easily ascertainable fact of his whereabouts and would, at the least, have directed the notices to him at that address."9

We thus hold that, at a minimum, due process requires that when a person is in the government's custody and

_____

9. At oral argument, McGlory did not press the position that due process mandates the use of certified as opposed to ordinary first class mail. In fact, "[c]ertified mail is dispatched and handled in transit as ordinary mail." United States Postal Service, Domestic Mail Manual, Issue 54, S912.1.1 (12/2/1999) (on the Web at http://pe.usps.gov/). As the Postal Service explains, the principal advantage of this type of service is evidentiary. Id. ("Certified mail service provides the sender with a mailing
receipt, and a delivery record is kept at the post office of address.").

Although we have at times noted the obvious evidentiary value of certified or registered mail, we have not required notice to be effected in
that manner. See, e.g., Zimmer Paper Prods., Inc. v. Berger & Montague, P.C., 758 F.2d 86, 91–93 (3d Cir. 1985) (first class mail and publication provided adequate notice in class action suit); United States v. Smith, 398 F.2d 173, 176–78 (3d Cir. 1968) (notice of divorce proceeding need not be sent by certified or registered mail); see also, e.g., DePiero v. City
of Macedonia, 180 F.3d 770, 788–89 & n.9 (6th Cir. 1999) (notice of right to contest parking ticket may be sent first class mail); Armendariz–Mata v. DEA, 82 F.3d 679, 683 (5th Cir. 1996) ("Under most circumstances, notice by ordinary mail is sufficient to discharge the government's due process obligations."); Weigner v. City of New York, 852 F.2d 646, 650–51 (2d Cir. 1988) (notice of tax foreclosure may be sent regular mail). Nor has the Supreme Court suggested a distinction of constitutional magnitude between these types of mail. See, e.g., Tulsa Prof 'l Collection Servs., Inc. v. Pope, 485 U.S. 478, 490 (1988) ("notice by mail" sufficient
to provide actual notice of probate proceedings); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 318–19 (1950) (trust beneficiaries had to be notified "at least by ordinary mail" . . . which is
"recognized as an efficient and inexpensive means of communication").

detained at a place of its choosing, notice of a pending administrative forfeiture proceeding must be mailed to the detainee at his or her place of confinement. Whether anything more is required is not presently before us in this appeal.

IV.

For the reasons set forth we will vacate the District Court's order of January 3, 1997 granting summary judgment to the government with regard to DEA seizure numbers 52425, 65613, 65615, 66651, 65323 and 67065 and remand to the District Court for further proceedings consistent with this opinion.10

_____

10. We note that the District Court's order of January 3, 1997 did not address McGlory's claim to property he contends was seized but never subjected to administrative or judicial forfeiture, although McGlory did raise the issue in his Rule 41(e) motion. The Magistrate Judge's report of July 23, 1998, adopted by the District Court in its September 22, 1998 order denying McGlory's motion for reconsideration, did address ten household items, and having determined that the government had properly accounted for all but two of the ten disputed items, determined that the government should return to McGlory a stereo system and camera which were seized but never forfeited or the value of these items. The status of the remaining twenty-six items that McGlory claims were also seized but not forfeited is not before us. The District Court may address them on remand.

17

ALITO, Circuit Judge, dissenting:

I dissent from the judgment of the court and from part III of the court's opinion, which concerns the constitutionality of the notice of forfeiture that was provided in this case. I cannot agree with the majority's decision on this issue because it seems to me to be plainly inconsistent with the legal rule on which the majority purports to rely. According to the majority, "due process requires that when a person is in the government's custody and detained at a place of its choosing, notice of a pending administrative forfeiture must be mailed to the detainee at his or her place of confinement." Maj. Op. at 16-17. That is precisely what may well have happened in this case, and yet the majority holds that the manner in which notice was given here violated due process.

In the majority's view, the following procedure should have been used. An employee of the Drug Enforcement Administration (a component of the Department of Justice) should have ascertained from the United States Marshals Service (another component of the Department of Justice) where McGlory was held at the various times in question[1] and then sent the notices of forfeiture to McGlory at those locations by first-class mail. Instead, this is what happened. An employee of the DEA sent the notices to the Marshals Service, which had legal custody of McGlory, knew his exact location at all times, and has extensive experience and responsibilities relating to the service of process. The notices were received by the Marshals Service (the DEA produced certified mail receipts for all of the notices at issue), and, if the Marshals Service followed its standard practice, the Marshals Service forwarded the notices "to the intended recipient at his place of confinement, by first class mail, postage prepaid." App. at 104. Indeed, the Chief Deputy Marshal for the Western

_____

1. At no time in this appeal has McGlory disputed the fact that he was moved from one facility to another during the relevant period. Indeed, in a submission filed shortly before the en banc argument, McGlory stated: "[T]he government saw fit to house Mr. McGlory while he was in their custody during this period at a number of state facilities which were apparently under contract with the federal government to house federal prisoners." Appellant's Oct. 25, 1999, Letter-Brief at 4 (emphasis added).

18

District of Pennsylvania affirmed that during the time in question "to the best of [his] knowledge and belief, the standard office procedures of the United States Marshal Service were followed, and all such correspondence was forwarded to Reginald D. McGlory at his place of confinement by first class mail, postage prepaid." Id. at 105. Thus, if the Chief Deputy Marshal's belief and knowledge are correct and the standard practice of the Marshals Service was followed, notice of the forfeitures was mailed to McGlory at his place of confinement by first-class mail -- precisely what the majority says that due process demands.

Why, then, does the majority think that due process was violated? The majority provides no express explanation. The majority opinion appears to hint at two possible explanations, but neither is supportable. First, the majority may believe that it is essential that the notice be sent to the detainee's place of confinement by "the forfeiting agency," Maj. Op. at 11, in this case the DEA, rather than the Marshals Service. Compare Weng v. United States, 137 F.3d 709, 715 (3d Cir. 1998)(treating the forfeiting agency, the DEA, and another component of the Justice Department, the Bureau of Prisons, as one entity for the purpose of due process notice requirements in administrative forfeiture of property of detainee). The majority, however, provides no reason for this requirement, and there is no constitutional basis for it. The forfeiture proceedings were brought in the name of the United States, and I fail to see why it matters for due process purposes whether the notices were mailed by a person working for the DEA or the Marshals Service. Suppose that the notices had been mailed by an employee of the United States Attorney's office or an employee of the Criminal Division of the Department of Justice in Washington. Would that make the notices constitutionally inadequate?

The other possible ground for the majority's decision is internal Executive Branch efficiency. The majority opines that "adding the Marshals Service in the chain of mailers duplicates the number of agencies handling the mail, thereby increasing the possibility of error, and doubles the time until . . . receipt [by the detainee]." Maj. Op. at 15. But

even if this is true, it does not matter for purposes of the Due Process Clause. What matters for due process purposes is that notice is in fact mailed to the right place at the right time. If those requirements are met, any inefficiency in the internal government procedures leading up to the mailing is a matter for the Executive, not the Judiciary.2

In sum, the en banc majority has rendered a decision that mailing by the Marshals Service, as opposed to the DEA, violates the Constitution, but the majority fails to say why, and no plausible explanation is apparent. I urge the majority to explain why it matters for due process purposes whether the notices were sent by the DEA or the Marshals Service. Since the majority has yet to offer such an explanation, and since none is apparent I would hold, contrary to the majority, that due process was satisfied in this case -- provided that the Marshals Service followed its standard practice and sent the notices in question to McGlory by first-class mail at his place or places of confinement. It is far from clear that McGlory has raised on appeal the argument that in fact the Marshals Service did not follow its standard practice with respect to the notices in question,3 but I would give him the benefit of the doubt on this point and remand for a factual finding by the District Court. If the District Court finds that the Marshals Service never sent the notices, I would agree with the

_____

2. The majority's suggestion that its decision is supported by Robinson v. Hanrahan, 409 U.S. 38 (1972), and United States v. $184,505.01, 72 F.3d 1160 (3d Cir. 1995), is plainly incorrect. Both cases held that due process was violated where notice of forfeiture was sent to the home address of a person who was incarcerated, rather than the place where he was being held, even though the government knew that the detainee was in custody. Neither case had anything to do with the issue presented here, viz., whether due process was violated because the DEA, instead of mailing the forfeiture notices directly to McGlory's place of confinement, mailed them to the Marshals Service, and the Marshals Service, if it followed its standard practice, then forwarded them to McGlory.

3. Rather, the main thrust of McGlory's argument, like the majority's analysis, focuses on the conduct of the DEA, and he contends that the DEA's actions -- mailing the notices to the Marshals Service -- were constitutionally inadequate.

majority that due process was not provided. But if the Court finds that the Marshals Service did send the notices, I would hold that due process was satisfied.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

21