**Terrance McDANIEL, Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

**No. 6:00–645–20.**

United States District Court, D. South Carolina, Greenville Division.

May 3, 2000.

---

## ORDER

HERLONG, District Judge.

This matter is before the court on the defendants' (collectively "government") motion for summary judgment. Terrance McDaniel ("McDaniel") opposes the motion. For the reasons below, the court grants the government's motion for summary judgment.

### I. STATEMENT OF THE FACTS

On February 16, 1993, police obtained written consent from McDaniel and three other criminal suspects to search their rooms at a Comfort Inn and to search a rental car being used by McDaniel and one of the other suspects. The officers found crack cocaine in the trunk of the rental car and in a handbag owned by one of the other suspects. They also found marijuana in a duffel bag owned by one of the other suspects. McDaniel and the three others were arrested, and the officers

seized cash totaling seventeen thousand ninety-five dollars ($17,095.00) from the person of McDaniel. McDaniel gave the officers his mother's address (20226 Blackstone Street, Detroit, Michigan) as his address.

McDaniel was indicted on March 23, 1993, by a federal grand jury on two drug counts. On April 12, 1993, the Drug Enforcement Agency ("DEA") began administrative forfeiture proceedings against the seventeen thousand ninety-five dollars ($17,095.00) by sending written notice of the seizure to McDaniel at 20226 Blackstone Street, Detroit, Michigan. In addition, the notice of the seizure was published in *USA Today* on April 21, April 28, and May 5, 1993, and it stated that the last day to file a claim was May 11, 1993. McDaniel claims that he was being held in custody at Fort Myers, Florida county jail beginning April 14, 1993.

On May 11, 1993, Gerald Saunders, an attorney representing McDaniel, notified DEA by letter that McDaniel intended to contest the forfeiture. On June 10, 1993, a new notice was sent to this attorney's address, and it provided for an additional twenty days to file a claim and cost bond.[1] The new notice was returned by the postal service as unclaimed.[2] On September 17, 1993, new notices again were sent to McDaniel at the addresses of his mother and of his supposed attorney. Notices also were sent to the other three suspects. On December 3, 1993, the DEA had not received a claim or cost bond and entered a final order of administrative forfeiture.

On January 12, 1994, the indictments against McDaniel were dismissed without prejudice. Albert Taylor ("Taylor"), an attorney retained by McDaniel after Mr. Saunders retired, made an oral request at this point for the return of the money. On December 1, 1994, Taylor sent a letter to the Assistant United States Attorney who prosecuted the case and again requested the return of the money to McDaniel. The prosecutor responded that the money had been administratively forfeited. Taylor informed McDaniel's sister "several months" later that the money had been forfeited, and McDaniel ceased his efforts for the return of the money once he learned this information. (Supplemental Mem. Supp. Opp'n Gov't's Mot. Dismiss at 3.)

McDaniel renewed his efforts to recover the money on September 3, 1999, when he filed the instant motion for return of the currency. McDaniel claims that the government deprived him of due process when it failed to provide him with reasonable notice of the forfeiture proceedings. Specifically, he claims that the government knew that he was incarcerated in county jail in Fort Myers, Florida and that notice sent to his mother's address was inadequate.

## II. PROCEDURAL HISTORY

McDaniel, proceeding *pro se*, filed a "motion to contest forfeiture" on September 3, 1999. On November 22, 1999, the government responded to McDaniel's motion and moved to dismiss.[3] In its response, the government construed McDaniel's motion as one pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure. The court, however, treated the motion as a civil complaint under the Due Process Clause of the Fifth Amendment to the United States Constitution and ordered the Clerk of Court to assign a new civil docket number to the case. *See McDaniel v. United States*, No. 00–645

---

1. An administrative forfeiture can be halted by a claimant's filing of a claim and cost bond. *See* 19 U.S.C. § 1608.

2. It is unclear why the notice was returned unclaimed. It is known that Mr. Saunders retired from the practice of law sometime in 1993.

3. The government attached affidavits and other exhibits to its motion. Consequently, the court announced in its order of February 28, 2000, that it was construing the motion as one for summary judgment. *See* Fed.R.Civ.P. 12(b), 56.

(D.S.C. February 28, 2000).[4] In addition, the court construed the government's motion as one for summary judgment and ordered the issuance of a *Roseboro* order.[5] The *Roseboro* order was issued on February 28, 2000. On March 9, 2000, the court revised its order of February 28, 2000, in several immaterial respects. On April 10, 2000, McDaniel supplemented his response to the motion for summary judgment.

### III. DISCUSSION OF THE LAW

### A. Summary Judgment Standard

A motion to dismiss should be construed as one for summary judgment if matters outside the pleadings "are presented to and not excluded by the court." Fed.R.Civ.P. 12(b). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. Administrative Forfeiture

Property "furnished or intended to be furnished by any person in exchange for a controlled substance" is subject to forfeiture. 21 U.S.C. § 881(a). Property worth five hundred thousand dollars ($500,000.00) or less is subject to administrative forfeiture without judicial involvement. *See* 19 U.S.C. § 1607. Under the forfeiture statutes and regulations, the administrative process requires the government to publish notice of the intent to seek forfeiture of the property once a week for three weeks and to send written notice to any party known to have an interest in the property. *See id.* § 1607(a); 21 C.F.R. § 1316.75. A claimant then has twenty days to file a claim and provide a cost bond. *See id.* § 1608. The filing of the claim and the bond stops the administrative process and requires the seizing agency to commence a judicial forfeiture proceeding. *See id.* If a claimant fails to file a claim and bond, the administrative agency may issue a declaration of forfeiture. *See id.* § 1609. This declaration vests the United States with title to the property and has the same effect as a final decree and order of forfeiture issued in a judicial proceeding. *See id.*

### C. Requirements of Due Process

■■■ Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of

---

**4.** The court's interpretation of McDaniel's claim was in accordance with *United States v. O'Connell*, No. 93–1047, 1993 WL 362068, at *1 (4th Cir. Sept. 20, 1993) (unpublished opinion) ("Although O'Connell's motion [for return of seized property] resembled a Fed. R.Crim.P. 41(e) motion, the court should have interpreted his claim as one alleging a Fifth Amendment due process violation." (citing *In re Sixty Seven Thousand Four Hundred Seventy Dollars*, 901 F.2d 1540, 1545 (11th Cir. 1990) (holding that 28 U.S.C. § 1331 grants federal question jurisdiction to review a petitioner's due process claim that does not challenge the merits of a forfeiture but challenges "the nature of the adjudicatory process itself"))); *see also United States v. Giraldo*, 45 F.3d 509, 511 (1st Cir.1995) ("The fact that Giraldo termed his motion as one under Rule 41(e) does not defeat the district court's juris-

diction. 'Where criminal proceedings against the movant have already been completed, a district court should treat a rule 41(e) motion as a civil complaint.' " (quoting *Onwubiko v. United States*, 969 F.2d 1392, 1397 (2d Cir. 1992))); *cf. Adames v. United States*, 171 F.3d 728, 730 (2d Cir.1999) ("The district court immediately assigned a new, civil docket number to Adames's case, implicitly treating his pleading as a new civil complaint, rather than as a motion in his completed criminal case.").

**5.** Although McDaniel already had filed a response to the government's motion to dismiss, the court issued the *Roseboro* order to ensure that McDaniel understood his burden in opposing a motion for summary judgment.

the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Although due process does not necessarily require actual notice, *see, e.g., United States v. 51 Pieces of Real Property,* 17 F.3d 1306, 1316 (10th Cir.1994), actual notice to the defendant or his counsel is required when the government knows that the defendant is incarcerated at the same time it is pursuing forfeiture. *See, e.g., Robinson v. Hanrahan,* 409 U.S. 38, 39, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972); *United States v. McGlory,* 202 F.3d 664, 671–74 (3d Cir.2000) (en banc) (gathering cases).

The government argues that it complied with due process by: (1) sending notice to McDaniel at his mother's address; (2) sending notice to McDaniel's attorney, Gerald Saunders; and (3) publishing notices in *USA Today.* Such notice, however, is inadequate if the government realized that McDaniel was in Fort Myers, Florida county jail. Viewing that fact in the light most favorable to McDaniel, it was necessary for the government to give actual notice of the forfeiture to McDaniel or his attorney in order to comport with due process. There is no evidence, however, that the notice sent to McDaniel's mother's address reached McDaniel or that McDaniel read the notices published in *USA Today.* In addition, the notice to McDaniel's attorney was returned as unclaimed. Thus, McDaniel has made out a claim for a due process violation that survives the government's motion for summary judgment.

## D. Remedy

The instant case is unique in that the five-year limitations period in which the government may bring a judicial forfeiture action has expired. *See* 19 U.S.C. § 1621. Courts are split as to the "proper remedy for a due process violation in an administrative forfeiture proceeding when the statute of limitations for filing a judicial forfeiture action has expired." *United*

*States v. Dusenbery,* 201 F.3d 763, 766 (6th Cir.2000). The approach of the Second and Sixth Circuits is to hold a hearing on the merits of the forfeiture question in district court. *See id.* at 768; *Boero v. DEA,* 111 F.3d 301, 307 (2d Cir.1997). Such an approach effectively "treat[s] the ineffective notice as voidable rather than void, so that the statute of limitations was tolled." *Dusenbery,* 201 F.3d at 767.

The approach of the Ninth and Tenth Circuits, however, is to declare the inadequately noticed forfeiture void and to order the government either to return the property or to pursue judicial forfeiture. *See United States v. Marolf,* 173 F.3d 1213, 1217 (9th Cir.1999); *Clymore v. United States,* 164 F.3d 569, 574 (10th Cir.1999). A decision on the merits would then be barred by the running of the statute of limitations, subject to the application of laches or equitable tolling principles. *See Marolf,* 173 F.3d at 1218; *Clymore,* 164 F.3d at 574. This court adopted the approach of *Marolf* and *Clymore* in *United States v. $57,960.00,* 58 F.Supp.2d 660, 663 (D.S.C.1999).

Although the appropriate remedy in the instant action is to declare the forfeiture void and order the government to return the currency or to pursue judicial forfeiture proceedings, the court declines to go so far. The court need not reach the issue of remedy, as the court finds that McDaniel's due process claim is barred by the application of laches.

## E. Statute of Limitations and Laches

### 1. Statute of Limitations

 Due process challenges to administrative forfeitures "are subject to the general six-year statute of limitations for suits brought against the United States found in 28 U.S.C. § 2401." *Boero,* 111 F.3d at 305 n. 5 (citing 28 U.S.C. § 2401(a) ("[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues.")). The limitations period accrued at the close of

the administrative forfeiture proceedings. *See Polanco v. DEA,* 158 F.3d 647, 654 (2d Cir.1998).[6] Accordingly, McDaniel did not have a claim for a violation of due process until December 3, 1993, when the final order of administrative forfeiture was entered. McDaniel filed his claim on September 3, 1999—exactly five years and nine months after December 3, 1993. Thus, McDaniel's claim is within the limitations period.

## 2. Doctrine of Laches

■ Regardless, the doctrine of laches is a viable defense in the instant case and applies to cut short the limitations period. *See Brin–Mont Chems., Inc. v. Worth Chem. Corp.,* 154 B.R. 903, 907 (M.D.N.C. 1993) ("[T]he doctrine of laches can, under exceptional circumstances, cut short an express statute of limitations."). "The equitable doctrine of laches precludes the prosecution of stale causes of action if the party bringing the action lacks diligence in pursuing his claim and the party asserting the defense has been prejudiced by that lack of diligence." *Newport News Shipbuilding & Dry Dock Co. v. Parker,* 935 F.2d 20, 27 (1991). Several factors support the application of laches. First, it has been recognized by other courts as an appropriate (although not necessarily successful) defense to due process attacks against administrative forfeitures. *See, e.g., Marolf,* 173 F.3d at 1218; *Ikelionwu v. United States,* 150 F.3d 233, 237–38 (2d Cir.1998). Second, laches has been applied in actions at law to promote "the twin goals of limiting monetary consequences to the government and compelling the speedy

resolutions of disputes," *Cornetta v. United States,* 851 F.2d 1372, 1376 (Fed.Cir. 1988) (en banc), and both of these goals would be furthered in the instant case. Third, the statute of limitations at issue is not a specific one for collateral due process attacks against administrative forfeiture proceedings. Rather, it is an omnibus, "catch-all" statute of limitations for civil claims against the United States. Consequently, the court is more willing to allow the statutory period to be cut short than if it were specifically directed toward the claim at issue.

In order for McDaniel's claim to be barred by the doctrine of laches,

> the government must show that [McDaniel] has (1) unreasonably or without excuse delayed in bringing his claim and (2) that the government has been materially prejudiced as a result of reliance on the delay. Only after both prongs have been met can the Court weigh the delay and prejudice to determine whether justice requires that the claim be barred. Under the doctrine of laches, the period of delay is measured from when the plaintiff had actual notice of the claim or would have reasonably been expected to inquire into the matter.

*Little v. United States,* 35 F.Supp.2d 538, 541 (E.D.Mich.1999) (internal quotations and citations omitted).

### a. Unreasonable Delay

■ The first prong of the defense is that the plaintiff "unreasonably or without excuse delayed in bringing his claim." *Id.*[7] The government offers ample evidence that this prong has been satisfied. The

---

**6.** The court notes that the Fourth Circuit has not decided when the statute of limitations accrues. Although it is arguable that the limitations period accrued at the time of seizure, the court agrees with the Second Circuit that "the specific constitutional violation alleged—the permanent deprivation of [the claimant's] property without notice—did not occur until sometime later, when the property was forfeited." *Id.*

**7.** The Second Circuit has held that a delay cannot be viewed as unreasonable when the government fails to show that the claimant knew of his right to challenge the forfeiture proceedings. *See Ikelionwu,* 150 F.3d at 237. *Ikelionwu* is distinguishable from the instant case, however, as McDaniel was informed of the administrative forfeiture proceeding by his attorney Gerald Saunders prior to the time of the administrative forfeiture. (Supplemental Mem. Supp. Opp'n Gov't's Mot. Dismiss at 1.)

cash was seized from McDaniel on February 16, 1993, which was six years and six months prior to the filing of the instant motion. The administrative forfeiture was completed on December 3, 1993, which was five years and nine months prior to the filing of the instant motion. The related grand jury indictments were dismissed on January 12, 1994, which was five years and seven months prior to the filing of the instant motion.

Although McDaniel may not have had actual notice of the administrative forfeiture, he knew that the cash had been seized and requested his attorney, Gerald Saunders, to seek the return of the money. Mr. Saunders sent a letter to the DEA on May 11, 1993, which was *prior to* the administrative forfeiture date of December 3, 1993. Moreover, McDaniel learned "several months" after December 1994 that the money had been administratively forfeited. (Supplemental Mem. Supp. Opp'n Gov't's Mot. Dismiss at 3.) In other words, McDaniel knew of the administrative forfeiture for over four years before he attempted the instant collateral attack, and he offers no reason for the delay.

Under these circumstances, the court is convinced that the instant due process attack has been delayed unreasonably. Moreover, courts have found similar delays in bringing a due process attack against an administrative forfeiture to be unreasonable. *See Little,* 35 F.Supp.2d at 541 (finding five-year delay to be unreasonable); *Hill v. United States,* 830 F.Supp. 270, 274 (E.D.Pa.1993) (estopping claimant from bringing action after a four-year delay, despite fact that the claimant had been in prison); *Tunstall v. United States,* No. 90–0128, 1991 WL 46329, at *3 (E.D.Pa. March 28, 1991) ("Two years is a reasonable time for someone who was taken into custody but released, and never prosecuted, to make some effort to retrieve currency that allegedly belonged to that person."). Thus, the government has sufficiently established that McDaniel's delay was unreasonable.

### b. Prejudice

The second prong is prejudice from the delay. The government offers sufficient evidence of prejudice. Most importantly, the money was distributed years ago to various law enforcement agencies. In addition, the court notes that prejudice is presumed to arise from an unreasonable delay. *See Giddens v. Isbrandtsen Co.,* 355 F.2d 125, 128 (4th Cir.1966); *see also United States v. $398,950,* No. 87–0263, 1999 WL 984424, at *5 (S.D.Fla. Sept.30, 1999) ("Furthermore, Roca Suarez asks this Court to release $3,559,268 that have been part of the United States' coffers for more than a decade. The prejudice to the United States in releasing those funds at this late date is clear and unwarranted."). Finally, the lapse of time makes proof in a judicial forfeiture action extremely difficult.

### c. Balancing

In order to determine whether the action is barred by laches, the court must "weigh the delay and prejudice to determine whether justice requires that the claim be barred." *Little,* 35 F.Supp.2d at 541. The court finds that the delay was especially unreasonable in light of the fact that McDaniel began efforts to retrieve the currency before the commencement of administrative forfeiture proceedings and that McDaniel was aware of the completion of the administrative forfeiture proceedings for over four years before he instituted the instant collateral attack. The only reasons McDaniel offers for his delay are that his moves from prison to prison made it "impossible to maintain contact with [his] attorney, Mr. Taylor" and that he was "[u]nder the impression that nothing could be done about the process." (Supplemental Mem. Supp. Opp'n Gov't's Mot. Dismiss at 2,3.) The court finds these reasons unpersuasive, as there was ample time over the four-year period for McDaniel to contact his attorney and research whether or not he could attack the administrative forfeiture. In addition,

there is significant prejudice to the government, and McDaniel has offered no evidence demonstrating a lack of prejudice. Accordingly, the court determines that justice requires the application of the doctrine of laches. McDaniel's claim is barred.

Therefore, it is

**ORDERED** that the government's motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

### NOTICE OF RIGHT TO APPEAL

The plaintiff is hereby notified that he has the right to appeal this order within sixty days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.