

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-6-2003

# USA v. Pompei

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-2550

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Pompei" (2003). *2003 Decisions*. Paper 221.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/221

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-2550

UNITED STATES OF AMERICA

v.

HARRY POMPEI,
Appellant

On Appeal From the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. Crim. No. 98-cr-196-7)
District Judge: Honorable Charles R. Weiner

Submitted Under Third Circuit LAR 34.1(a)
September 12, 2003

Before: ALITO, BARRY and ALDISERT, <u>Circuit</u> <u>Judges</u>

(Filed: October 6, 2003 )

OPINION

PER CURIAM

Harry Pompei appeals <u>pro</u> <u>se</u> a District Court order denying his motion for the

return of property filed pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure.[1]  For the reasons that follow, we will affirm.

In March 1998, federal agents and state police executed a search warrant at 1404 Dyke Branch Road, Dover, Delaware, a home owned by Pompei.  The search revealed that the residence was the site of a clandestine methamphetamine lab.  The next month, Pompei and six others were indicted on various drug charges.  The indictment also sought criminal forfeiture of certain property, including Pompei's home.  In August 1998, Pompei pleaded guilty to conspiracy to manufacture and distribute more than 1 kilogram of methamphetamine and possession of P2P with intent to manufacture methamphetamine.  Pursuant to the plea agreement, Pompei also agreed to forfeit his home, $5000 in a bank account, and $50,000 in United States currency, assets which Pompei acknowledged constituted proceeds of, or facilitated, drug trafficking activity.

Simultaneous with entry of the criminal judgment and sentencing, the government sought and was granted a preliminary order of criminal forfeiture as to the money only.[2]  See 21 U.S.C. § 853.  The government did not seek forfeiture of the residence because of concern about possible chemical contamination of the property.  Pompei did not file an

---

[1] In December 2002, Rule 41(e) was re-lettered as Rule 41(g).  We will refer to the version of the rule in existence at the time the District Court issued its order.

[2] Although $50,000 was found in Pompei's home at the time of his arrest, the government contends that the money was not seized and that the order directing forfeiture of $50,000 was "intended as a forfeiture money judgment, and not emanating from any seizure of $50,000 from Pompei's residence at the time of the search."  Appellee Br. at 16, 20.

appeal from the judgment of conviction and sentence, or object to the order of forfeiture.

Two years later, in December 2000, the government filed a motion for an order of forfeiture of the home as a substitute asset pursuant to 21 U.S.C. § 853(p), asserting that Pompei "failed to pay the agreed-upon forfeiture of $50,000.00 and the government has identified no other assets from which to satisfy the defendant's forfeiture obligation."[3] The District Court granted the government's motion, entered the order, and, receiving no challenge or objection, entered a final order of forfeiture for substitute assets on June 19, 2001, directing that Pompei's home be forfeited to the United States. According to the government, the home was sold to a third party by the United States Marshals Service on November 29, 2001.

On January 2, 2002, Pompei moved pursuant to Rule 41(e) for return of the property at 1404 Dyke Branch Road, contending that he was not provided with notice prior to the seizure and forfeiture of the home. The District Court denied the motion, noting that the forfeiture was explained to Pompei at the plea hearing and that Pompei was adequately provided with notice of the forfeiture through his attorney. Pompei timely appealed. See United States v. Bein, 214 F.3d 408, 412 n.3 (3d Cir. 2000).

It is well-settled that the government may seize evidence for use in an investigation and trial, but it must return the property once the criminal proceedings have concluded,

---

[3] By this time, an environmental site assessment report of the home had been completed; the report found no significant contamination on the premises.

unless it is contraband or subject to forfeiture.  See United States v. Chambers, 192 F.3d 374, 376 (3d Cir. 1999).  A district court has jurisdiction to entertain a motion for return of property even after the termination of criminal proceedings against the defendant; such an action is treated as a civil proceeding for equitable relief.  See United States v. McGlory, 202 F.3d 664, 670 (3d Cir. 2000) (en banc).  We have appellate jurisdiction pursuant to 28 U.S.C. § 1291, and we review the District Court's decision to exercise its equitable jurisdiction for abuse of discretion.  Chambers, 193 F.3d at 376.

Pompei claims that he did not receive sufficient notice about the forfeiture of his home.  The facts belie his assertion.  "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  Mullane v. Central Hanover Bank & Trust, Co., 339 U.S. 306, 314 (1950).  Here, Pompei received notice of the forfeiture of his home in both the indictment and guilty plea agreement.  The indictment contained a count seeking forfeiture of Pompei's home.  Significantly, Pompei had the opportunity to challenge the forfeiture but chose to accept a guilty plea agreement wherein he agreed to forfeit the property.  The fact that the government waited until the property was deemed uncontaminated before seeking its forfeiture does not diminish the

notice Pompei initially received.[4]

Pompei relies on, inter alia, <u>Robinson v. Hanrahan</u>, 409 U.S. 38 (1972) and <u>United States v. James Daniel Good Real Property</u>, 510 U.S. 43 (1993), for the proposition that he was denied due process. This reliance is misplaced. Those cases involved civil forfeiture proceedings where the claimants had no notice or opportunity to challenge the forfeiture. Here, by contrast, Pompei knew through his indictment that the government sought to criminally forfeit his home, had an opportunity to defend against the forfeiture, but chose to plead guilty and agreed to relinquish his interest in the property. Thus, because he was not deprived of his right to due process, the District Court did not abuse its discretion in denying Pompei's Rule 41(e) motion.

---

[4] In fact, when the government sought forfeiture of the home, additional steps were taken to ensure proper notice: all motions and orders concerning the forfeiture of the property were sent to Pompei's criminal attorney by the Clerk of the Court and notice of the preliminary order of forfeiture was published in the "Delaware State News" three times in January 2001.