**Don Ameche FOEHL, Sr., Appellant,**

v.

**UNITED STATES of America.**

**No. 99–5460.**

United States Court of Appeals, Third Circuit.

Submitted Pursuant To Third Circuit L.A.R. 34.1(a) Nov. 14, 2000.

Filed: Feb. 1, 2001.

Stanley N. Silverman, Law Offices of Silverman & Kost, P.C., Montclair, NJ, for Appellant Don Ameche Foehl, Sr.

Peter W. Gaeta, Assistant United States Attorney, Robert J. Cleary, United States Attorney, Newark, NJ, for Appellee U.S.

Before SLOVITER, AMBRO, and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

Plaintiff filed this civil action seeking to invalidate the administrative forfeiture of $93,163 in United States currency, which he now asserts was his property. The crux of his complaint is that the Drug Enforcement Administration did not properly notify him of the impending forfeiture. The DEA made a single attempt at notification by mailing a letter to the plaintiff's former address. This letter was returned with the notation "Attempted Not Known." Given the circumstances described in this record, minimal, reasonable effort would have enabled the government to locate plaintiff and send a letter to a current residence. In the absence of sufficient notice, we conclude that it was error to enter summary judgment for the government, and we will reverse.

On February 22, 1993, the pickup truck driven by plaintiff Don Ameche Foehl, Sr. was pulled over for speeding by Beaumont Township police in Jefferson County, Texas. The officers searched the truck and discovered $93,163 in cash in the spare tire. A small quantity of marijuana was found in an additional tire laying in the bed of the truck. Although Foehl allegedly denied ownership of the currency at the scene, he refused to sign a document to that effect.

Foehl produced a vehicle registration card verifying that the pickup truck was owned by his wife, Bonnie Foehl, of 8817 Lott Road, Eight Mile, Alabama. The parties dispute, however, whether Foehl provided police with a current address for

himself at the time of the arrest. He admits producing an Alabama driver's license showing a prior address of 103 So. Thompson Court, Chickasaw, Alabama. Foehl alleges, however, that he told the officers that his residence had changed to 8817 Lott Road,[1] Eight Mile, Alabama, and that he had not yet obtained a license reflecting the change of address. He also contends that he again gave the police the Lott Road address while being fingerprinted at the Beaumont Township Police Station.

The arresting officer's report, in contrast, lists only the Thompson Court residence. In his declaration filed in the District Court, the officer said that Foehl never provided an address other than the one at Thompson Court, but he admitted that documents found in the vehicle indicated that Don Ameche Foehl, Jr. and Bonnie Foehl resided at Lott Road.

Plaintiff posted $100 cash bail and the Beaumont police released him on the day of his arrest. He asserts that at the time of his release the police gave him the following: a copy of the arrest report, a notice to appear in court, receipt for the bail money, a receipt for the truck's impoundment, and a receipt for the approximately $93,000 in currency. All of these documents, he alleges, referred to the Lott Road address.

On March 12, 1993, the District Clerk for Jefferson County, Texas, issued Notices of Forfeiture for the pickup truck to Foehl and his wife at 8817 Lott Road. Sent by certified mail, the notices were delivered to that address on March 15th. The return-receipt cards were signed by a "Carol Barnhill" and returned. The record contains no information about the identity of this person or what her relationship to the plaintiff might have been.

---

1. At various points in the record, the address is listed as 8817 or 8825 Lott Road. A DEA agent explained that number 8817 appears to be plaintiff's auto repair garage, while his

home is located on the adjoining plot, number 8825. We will treat the Lott Road addresses as one.

Bonnie Foehl's attorney filed a claim for the truck on her behalf on April 5, 1993. Because Foehl had not joined in his wife's claim, he was served notice in person at the Jefferson County courthouse on June 23, 1993, when he appeared in connection with the charges filed by the Beaumont police. The proceeding involving the truck was settled some weeks later.

Meanwhile, on March 5th, 1993, the Beaumont police had contacted the DEA, which ultimately "adopted" the seized cash[2] and accepted the case for administrative forfeiture. A letter from the DEA advising plaintiff of the proposed forfeiture was sent by certified mail on March 29, 1993 to the Thompson Court address. The letter was returned with the notation "RETURNED TO SENDER—ATTEMPTED NOT KNOWN." It is not clear on what date the letter was returned. On April 7, April 14, and April 21, 1993, the DEA published Notice of Seizure in the *USA Today* newspaper.

On April 19, 1993, DEA headquarters, whose location is not revealed in the record, asked its Houston division for alternative addresses for plaintiff. That office responded that "[c]ase files and case agent have no other addresses available." So far as the record reveals, the DEA made no other efforts to determine the plaintiff's whereabouts, nor did it further attempt to notify him of the proceedings. The currency was forfeited on June 18, 1993.

Months before his arrest in Texas, plaintiff had been the subject of a separate and unrelated DEA investigation. Law enforcement officers had spent several weeks observing events at the Lott Road location. Convinced that plaintiff was involved in drug trafficking, the DEA obtained an indictment in the United States District Court for the Southern District of Alabama on May 20, 1993, charging him with violating narcotics laws. He was arrested six days later and released on his own recognizance, with "Lott Road" listed as his address. After entering a plea bargain, he began a 60–month sentence on February 8, 1994.

In a declaration filed in the case before us, Foehl asserted that he and his wife tried continuously to reclaim the money but were thwarted in every attempt. He sent several letters to the Beaumont police, but the only response he received allegedly stated that he could not pursue his claim until he had completed his federal sentence.

Foehl contends that it was not until 1998, through the efforts of his current counsel, that he learned that the DEA had forfeited the currency shortly after receiving it from the Beaumont police. Listing his address as Union County, New Jersey, he filed a complaint in the United States District Court for the District of New Jersey in June 1998, seeking to overturn the forfeiture.

The District Court granted summary judgment in favor of the government, relying on several grounds. It concluded that Foehl had given the Beaumont police the Thompson Court address, and that he had presented no evidence that the DEA was, or should have been, aware that the information was incorrect. Foehl had not been in custody when the letter was sent; therefore, the Court reasoned that notice by certified mail to the Thompson Court location was constitutionally sufficient.

The District Court also held that the claim was barred by the doctrine of laches because the five-year delay in bringing the claim was both unreasonable and prejudicial to the government. In addition, the

---

**2.** Seizures performed by state or local law enforcement officials are "adopted" by the DEA when it takes custody of the seized property and treats it as if the agency had made the initial seizure. The DEA then institutes forfeiture proceedings in accordance with federal law. The Attorney General is authorized to share the forfeited property with local law enforcement organizations, assuring that the proportion given "bears a reasonable relationship to the degree of direct participation of the State or local agency in the law enforcement effort resulting in the forfeiture . . . ." 21 U.S.C. § 881(e)(3)(A).

Court pointed out that Foehl's complaint cited the Federal Tort Claims Act, 28 U.S.C. § 1346(b), as a basis for jurisdiction, but that the two-year statute of limitations had expired on that cause of action.

The parties agree that the Tort Claims Act does not apply here. Foehl contends that the one reference to the Act in his complaint was inadvertent, and that his claim is predicated on the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.,* which was cited at the beginning of his complaint and to which Counts One through Five referred. Foehl argues that the District Court should have granted him leave to clarify his complaint to reflect a claim under the Administrative Procedure Act, or, alternatively, assumed jurisdiction pursuant to 28 U.S.C. § 1331, as the district judge conceded he could have done.

### I.

■ This Court exercises *de novo* review over a district court's grant of summary judgment. *See Goosby v. Johnson & Johnson Med., Inc.,* 228 F.3d 313, 318 (3d Cir.2000). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Goosby,* 228 F.3d at 318. We view the facts in the light most favorable to the party against whom summary judgment was entered. *Medical Protective Co. v. Watkins,* 198 F.3d 100, 103 (3d Cir.1999).

■ We address first the District Court's holding that the claim was barred by the Federal Tort Claims Act's statute of limitations. We would agree with that conclusion if that Act were the basis for Foehl's suit. We find, however, that this case was brought pursuant to the Administrative Procedure Act.[3]

It is understandable that the District Court assumed that the Tort Claims Act was the basis for the plaintiff's case, given that plaintiff cited that statute specifically. On the other hand, in the heading of the complaint and in all five counts, plaintiff cited the Administrative Procedure Act. The civil action cover sheet also referred to the APA "to challenge and seek recovery of approximately $94,000 in currency confiscated from the plaintiff."

### II.

Although summary judgment was properly entered against any claim under the Federal Tort Claims Act, the Court had the authority to consider the complaint under a number of alternative theories. In *United States v. McGlory,* 202 F.3d 664, 670 (3d Cir.2000) (en banc), we held that a district court had equitable jurisdiction "to consider a claim that a person received inadequate notice of completed administrative forfeiture proceedings."[4] At least one court has found that the Administrative Procedure Act itself creates a right of review of federal agency actions presenting issues of adequate notice. *Armendariz–Mata v. U.S. Dep't of Justice,* DEA, 82 F.3d 679, 682 (5th Cir.1996).

Indeed, "the federal courts have universally upheld jurisdiction to review whether

---

**3.** The Administrative Procedure Act makes reviewable any "final agency action for which there is no other adequate remedy in a court," 5 U.S.C. § 704, so long as the statute under which the agency acted does not preclude judicial review or the agency action is not "committed to agency discretion by law." *Id.* § 701(a).

**4.** This is so even if the claim is styled as a Federal Rule of Criminal Procedure 41(e) mo-

tion for the recovery of property and is brought after criminal proceedings are completed; courts are to treat such claims as civil suits seeking to set aside forfeitures. *McGlory,* 202 F.3d at 670; see *United States v. Garcia,* 65 F.3d 17, 20 (4th Cir.1995) (same); *Thompson v. Covington,* 47 F.3d 974, 975 (8th Cir.1995) (same); *United States v. Giovanelli,* 998 F.2d 116, 118 (2d Cir.1993) (same).

an administrative forfeiture satisfied statutory and due process requirements." *United States v. Woodall*, 12 F.3d 791, 793 (8th Cir.1993) (finding jurisdiction in equitable principles); *United States v. Minor*, 228 F.3d 352, 357 (4th Cir.2000) (finding jurisdiction to consider the plaintiff's "constitutionally-derived equitable challenge to the administrative forfeiture of the currency under the provisions for general federal question jurisdiction"); *United States v. Dusenbery*, 201 F.3d 763, 766 n. 7 (6th Cir.2000) (same); *United States v. Clagett*, 3 F.3d 1355, 1356 (9th Cir.1993) (same); *Sarit v. U.S. Drug Enforcement Admin.*, 987 F.2d 10, 16–17 (1st Cir.1993) (same). In other words, a claimant can "collaterally attack an inadequately noticed administrative forfeiture by suing for equitable relief, *i.e.*, the return of the seized property under 28 U.S.C. § 1331, via the waiver of sovereign immunity found in section 702 of the Administrative Procedure Act." David B. Smith, 1 *Prosecution and Defense of Forfeiture Cases*, § 6.02, at 6–29 (2000).

█ In light of this substantial authority, we conclude that the District Court was correct in considering the constitutional issue of adequate notification under theories other than the Tort Claims Act.

### III.

At the time of plaintiff's arrest, the procedure for initiating an administrative forfeiture in a drug case was governed by 21 U.S.C. § 881 and 19 U.S.C. §§ 1607–08. The government was required to send a letter notifying the property owner of the impending forfeiture and to publish notice of the seizure for three successive weeks in a newspaper of national circulation. 19 U.S.C. § 1607(a).

█ In giving effect to these statutory requirements, due process requires that notice to the property owner be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objec-

tions." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). In *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), the Court reiterated *Mullane's* due process standard, stating that "[n]otice by mail or other means as certain to insure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of [a] party ... if its name and address are reasonably ascertainable." More specifically, the Court has cautioned that "[f]orfeitures are not favored; they should be enforced only when within both letter and spirit of the law." *United States v. One 1936 Model Ford V–8 De Luxe Coach*, 307 U.S. 219, 226, 59 S.Ct. 861, 83 L.Ed. 1249 (1939).

We have held that a notice of forfeiture mailed to an owner's home when the government knew that the defendant was in jail did not satisfy constitutional due process requirements. *United States v. $184,505.01 in U.S. Currency*, 72 F.3d 1160, 1163–64 (3d Cir.1995); see also *Robinson v. Hanrahan*, 409 U.S. 38, 40, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972) (notice of state forfeiture proceedings was inadequate when mailed to claimant's home while claimant was imprisoned); *Lopez v. United States*, 201 F.3d 478, 482 (D.C.Cir. 2000) (same conclusion, even though claimant's wife received notice); *Torres v. $36,256.80 U.S. Currency*, 25 F.3d 1154, 1161 (2d Cir.1994) (notice inadequate "where the ... notice ... is returned undelivered, the intended recipient is known by the notifying agency to be in government custody, and the agency fails to take steps to locate him").

Although this Court has never required "actual notice," we have held that mailing notice to the United States Marshals Service, in whose custody the claimant was held at the time of the mailing, was constitutionally inadequate. *McGlory*, 202 F.3d

at 673–74.[5] In *United States v. One Toshiba Color Television*, 213 F.3d 147, 155 (3d Cir.2000) (*en banc*), we held that the government had the burden of establishing that the procedures at the prison to which a forfeiture notice was sent were reasonably calculated to insure delivery of the notice to the intended recipient. *See also Minor*, 228 F.3d at 358 (adopting *One Toshiba* standard); *Small v. United States*, 136 F.3d 1334, 1337–38 (D.C.Cir. 1998) (when government has information that a reasonable person would use to locate the claimant, it is obliged to resend notice if doing so would not be burdensome); *Woodall*, 12 F.3d at 794–95 (placing a greater burden on government in notifying an incarcerated claimant or one whom the government is prosecuting). These cases illustrate that, particularly where the claimant is in a place chosen by the government, due process may require that the government make multiple attempts at notification if the claimant's name and address are reasonably ascertainable. *Accord United States v. Rodgers*, 108 F.3d 1247, 1251 (10th Cir.1997) (charging the DEA with information about the plaintiff's address provided by local authorities' seizure records).

In this case, the District Court relied on *Madewell v. Downs*, 68 F.3d 1030 (8th Cir.1995). There, notice was sent to the claimant's last known address, the one he admitted giving to the authorities upon his arrest. The letter was returned marked "Moved. Left no address." *Id.* at 1035. Although the claimant alleged that the DEA knew his correct address, the Court refused to credit that assertion in the absence of evidence that the DEA had any contact with the claimant that would have alerted it to his change of address. *Id.* The Court concluded that the lack of notice was the result of the claimant's own conduct and, accordingly, granted summary judgment to the government. *Id.* at 1047.

We question *Madewell's* holding on notice, particularly in the context of a motion for summary judgment, and note that it appears inconsistent with *United States v. Cupples*, 112 F.3d 318 (8th Cir.1997),[6] decided later by the same Court. In any event, we find *Madewell* distinguishable.

■ Here, the District Court stated that the government directed its "notification to the address that Plaintiff provided to police when he was arrested." Citing *Madewell*, the Court observed that when a person moves, it is his obligation to advise the Post Office of his change of address; and therefore, lack of notice resulting from his failure to do so could not be attributed to the government. Unlike *Madewell*, however, the parties to this case sharply contest the address Foehl gave to the Beaumont police at the time of his arrest. *Madewell*, therefore, is not helpful in resolving the case before us at the summary judgment stage.

When the notice sent to Thompson Court was returned to the DEA, the agency did nothing more than make a cursory check with its division office in Houston, Texas, which, according to the record, had no prior involvement with Foehl's case. Because his driver's license was issued in Alabama, one would have expected the DEA to check with its New Orleans Division, which includes the offices in Alabama.

The report prepared by the police on the date of the arrest in Texas shows that the Mobile, Alabama Sheriff's Office had informed the Beaumont authorities that Foehl was a known marijuana trafficker and was about to be indicted by federal authorities.[7] Had the DEA contacted its

---

**5.** Other courts have taken a more relaxed view on the adequacy of notice. See *Whiting v. United States*, 231 F.3d 70, 76 n. 6 (1st Cir. 2000) (citing cases).

**6.** In *Cupples*, the Court observed that in the circumstances there, whether the claimant received actual notice was a question of fact to be determined by the trial court. 112 F.3d at 320.

**7.** Chickasaw and Eight Mile are located about eight miles apart on the northern outskirts of Mobile, Alabama.

Alabama branch, it almost certainly would have learned of Foehl's impending arrest and of the Lott Road address.

It is a fair inference that the DEA, having adopted the currency from the Beaumont police, was aware that the Texas authorities were undertaking forfeiture proceedings on the truck. In those circumstances, it is difficult to understand why the DEA did not confirm Foehl's address with the Beaumont police or the Jefferson County district attorney. A simple phone call to either would have revealed that notice of the truck's forfeiture had been mailed to Foehl and his wife at Lott Road.

Moreover, although Foehl was not in jail at the time the notice was returned, he had been released on bail.[8] We can safely assume that the Beaumont police had a very good idea of his whereabouts during that time. *Accord Woodall*, 12 F.3d at 794 (holding that where defendant is released to an address known to the government, due process requires the government to notify defendant at that address).

Finally, the record establishes that a duplicate license was issued to Foehl on March 3, 1993, listing Lott Road as his address. A call to the Alabama License Bureau in March or April of 1993 would have revealed his then-current address.

The record in this case, viewed in the light most favorable to Foehl as the non-moving party, reveals that he lived at the Lott Road address at the time of the notice and forfeiture. After learning that Foehl did not receive the letter mailed to the Thompson Court address, the DEA, with the most minimal effort, could have obtained his correct address and notified him of the impending forfeiture.

We do not impose on a forfeiting agency the burden of checking all possible sources for a claimant's address. The DEA was,

however, obligated under *Mullane* to provide notice reasonably calculated under all the circumstances to apprise him of the proceedings. The DEA had four obvious sources: the Beaumont Township Police Department, the Jefferson County district attorney, the DEA office for Alabama, and the Alabama Driver's License Bureau. The DEA's failure to check with any of these sources was unreasonable under the circumstances, and its minimal effort to notify plaintiff of the forfeiture cannot fairly be considered to be "within both letter and spirit of the law." *One 1936 Model Ford*, 307 U.S. at 226, 59 S.Ct. 861.

Nor do we require or even imply that notice by writing or other means be certain to insure actual notice as a minimum constitutional precondition. Our focus here is rather on the glaring lack of effort by the DEA to ascertain Foehl's correct address. The constitutional mandate of adequate notice cannot be treated as empty ritual.

Because of disputed material facts and errors in the application of relevant legal authorities, the record in this case does not support the grant of summary judgment in favor of the government, and we are, therefore, compelled to reverse that ruling.

## IV.

■ We need not reach the laches issue because the defense is not available where a judgment is void. In *One Toshiba*, we held that a judgment of forfeiture obtained without proper notice to a claimant is void, and that the passage of time could not transmute this nullity into a binding judgment. *One Toshiba*, 213 F.3d at 157–58. At least three Courts of Appeals have decided similarly. *See Clymore v. United States*, 217 F.3d 370, 378 (5th Cir.2000), *aff'd on panel reh'g*, No. 99–50860, 2000

---

8. The record does not reveal when the notice was returned to the DEA. In *Small*, 136 F.3d at 1337, the Court resolved this issue in the claimant's favor, stating "the United States failed to record the date on which it received the letter [notifying claimant of forfeiture] back; information on that issue is within the government's exclusive control, and so the government ... must bear the burden of this gap in the record."

WL 1206012, at *1 (5th Cir. Aug.24, 2000); *Kadonsky v. United States*, 216 F.3d 499, 508 (5th Cir.2000); *United States v. Marolf*, 173 F.3d 1213, 1216–18 (9th Cir.1999); *Clymore v. United States*, 164 F.3d 569, 572–74 (10th Cir.1999). *But see Dusenbery,* 201 F.3d at 768 (treating inadequate notice as voidable); *Boero v. Drug Enforcement Admin.*, 111 F.3d 301, 307 (2d Cir.1997) (same). Because the record at this stage does not support a finding of proper notification, laches is not a proper defense.

## V.

One other matter requires resolution on remand. The government denies that Foehl was a resident of New Jersey at the time he filed his complaint, contending that he currently lives in Alabama. Indeed, the government asserts that Foehl was an inmate in a federal prison in Arkansas when he began this suit and, accordingly, was not entitled to lay venue in New Jersey.

The District Court noted that the government's objection attacking venue may have been untimely and therefore waived. In view of its disposition of the case, however, the Court found it unnecessary to decide the issue. We are inclined to agree that the challenge to venue may have been waived. Nevertheless, the District Court may wish to transfer the case to a more appropriate district in accordance with the flexibility provided by 28 U.S.C. §§ 1404 and 1406.

Because this suit was brought under the Administrative Procedure Act rather than as a motion under Federal Rule of Criminal Procedure 41(e), we need not be concerned by the venue restrictions in that rule.[9] Here, there were no federal criminal proceedings to which the forfeiture was related, nor are any in progress. Moreover, currency is fungible and, unlike a *res*, which has some tangible connection with a definite location, presents no compelling venue problems. We therefore consider this suit as governed by the broader venue provisions of 28 U.S.C. § 1391 and 28 U.S.C. § 1406.

It appears that resolution of the facts affecting the issues in this case will require further proceedings. Even if Foehl did reside in New Jersey at the relevant time, the convenience of the parties and witnesses would arguably be better served if the proceedings were conducted in the Eastern District of Texas or the Southern District of Alabama. New Jersey does not appear to be a convenient location for any of the parties involved, and the District Court may wish to transfer this case to a more appropriate venue for disposition.

Accordingly, the judgment of the District Court will be reversed and the case remanded for further proceedings consistent with this opinion.

SLOVITER, Circuit Judge, Dissenting.

I cannot join the majority's opinion. I believe it fails to recognize the express limitation in this court's prior cases that consider what is required to give notice of forfeiture. In the name of due process, the majority expands that requirement beyond the applicable precedent and extends the government's duty beyond reasonable

---

9. We note that in cases brought under Federal Rule of Criminal Procedure 41(e), the question of the proper venue has caused a circuit split. Even though the courts treat the proceedings as civil suits, the Courts of Appeals for the Fourth and Tenth Circuits have decided that when the criminal proceeding has been concluded, any suit to set aside the forfeiture must be filed in the district in which the property was seized. *See Clymore*, 164 F.3d at 574–75; *Garcia*, 65 F.3d at 20–21.

The Second and Eighth Circuits, on the contrary, have held that the district court in which the criminal proceeding had taken place was the proper venue. See *Thompson*, 47 F.3d at 975; *Giovanelli*, 998 F.2d at 119. This circuit split would be resolved by the proposed change in Federal Rule of Criminal Procedure 41(g) designating the district in which seizure occurred as the location where a motion must be filed.

limits without providing a workable benchmark.

### A.

The Supreme Court enunciated the overarching principle of due process notice in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950), stating that "[a]n elementary and fundamental requirement of due process ... is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." That principle was applied in *Robinson v. Hanrahan*, 409 U.S. 38, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972), where the Supreme Court held that notice mailed to a prisoner's home address by the state in whose custody the prisoner was held failed to meet the standard set in *Mullane*. Thereafter, this court was presented with three cases relating to the adequacy of notice of different forfeitures to the same prisoner, Reginald McGlory: *United States v. $184,505.01 in U.S. Currency*, 72 F.3d 1160 (3d Cir.1995) (notice deficient when sent to last home address of claimant the government knew to be incarcerated); *United States v. McGlory*, 202 F.3d 664 (3d Cir.2000) (en banc) (notice inadequate when sent to United States Marshal's Service located in courthouse where claimant was convicted rather than to prison where he was incarcerated); and *United States v. One Toshiba Color Television*, 213 F.3d 147 (3d Cir. 2000) (en banc) (notice inadequate when sent to prisoner's pre-incarceration address and his ex-wife's home).

In all three McGlory cases, the dispositive fact with regard to the due process requirement was that the person seeking to challenge the forfeiture was in prison at the time of the notice. As we stated in *One Toshiba*, "the circumstances of prisoners differ greatly from free citizens, a fact that potentially alters the evaluation of what steps are reasonably calculated to provide notice. When an individual is incarcerated at a location of the government's choosing, the government's ability to find and directly serve him or her with papers is at or near its zenith. Not only does the government know where to find the person, it can be equally sure that he or she will be there when the papers are delivered. Indeed, it can even move the person to a more convenient location if it so chooses." 213 F.3d at 154.

### B.

The majority relies on these and other cases where the issue was the nature of the government's duty to give notice of forfeiture to a prisoner whose whereabouts the government must be presumed to know, unlike this case where the appellant was at large. The case at hand more closely resembles *Madewell v. Downs*, 68 F.3d 1030, 1046 (8th Cir.1995), than any case in the McGlory trilogy. In *Madewell*, the DEA mailed a notice by certified mail to the address the property owner gave when arrested and took no further action directly to notify him, even after the letter was returned marked "Moved. Left no address." Before the notice was sent, Madewell had given his new address to the prosecutor in the related state proceeding, but the DEA never called the prosecutor. The Eighth Circuit held that the DEA's notification efforts were constitutionally sufficient, noting that Madewell like Foehl was not in federal custody, not being prosecuted for a federal offense, and not on release to a new address by a federal court during the notice period. The court found the DEA had no obligation to inquire as to Madewell's address because it had no notice the address had changed. *See Madewell*, 68 F.3d at 1050.

I do not disagree with the propositions the majority derives from the cases it cites, namely that: (1) the government does not satisfy due process when it sends a notice to an interested party's home address knowing the party is in prison; and (2) the government has a heightened burden to ensure notice to an incarcerated

interested party, particularly when it incarcerated the party. However, these propositions are neither inconsistent with *Madewell* nor compel a finding that the notice in this case was inadequate. The majority fails to address the following obvious distinctions between the cases establishing these principles and this case: (1) the DEA did not know Foehl did not reside at the Thompson Court address when it mailed the notice there; (2) Foehl was not incarcerated at the time the government sought to give notice of the forfeiture, nor was he subject to any version of federal custody during the notice period; and (3) Foehl violated Alabama law by failing to update the address on his driver's license.

### 1. The DEA Did Not Know the Thompson Court Address Was Incorrect

Judging the DEA's initial notification effort at the time it was made, it was reasonably calculated to notify Foehl of the impending forfeiture. This good faith effort is completely distinguishable from the notification efforts this court found deficient in the McGlory trilogy. In the McGlory cases, the government had reason to know when it sent the notices that McGlory did not reside at the addresses to which it sent them.

It is clear that when the government mails a notice to an address where it knows an interested party does not reside (for example, because it has incarcerated the party) it has not made reasonable efforts to notify the party. *See $184,505.01 in U.S. Currency*, 72 F.3d at 1163–64 (citing *Robinson*, 409 U.S. 38, 93 S.Ct. 30, 34 L.Ed.2d 47, and other cases). However, I am not persuaded by the majority's apparent equation of such a situation to one in which the government mails a notice to an address where it believes a claimant resides, only to discover that the address is invalid when the notice is returned undelivered. In the first situation, the notice was constitutionally inadequate when sent. In the second, the notice, when sent, was reasonably calculated to reach the claimant. *Cf. Madewell*, 68 F.3d at 1046 ("Whether notice was adequate is measured at the time the notice was sent.") (quoting *United States v. Woodall*, 12 F.3d 791, 794 (8th Cir.1993)).

### 2. Foehl Was Not Incarcerated

Because Foehl was not incarcerated during the notice period, he did not "lack[ ] the ability to take steps to ensure that his mail [was] actually delivered to him," *One Toshiba*, 213 F.3d at 154, one of the important bases on which we predicated that decision. As we explained, "[i]n the outside world, an individual who changes addresses can arrange to have mail forwarded and can notify interested parties as to the change of address." *Id.* This is particularly applicable to Foehl, who was well aware that the officers had found and seized $93,163 in cash along with marijuana hidden in spare tires in his wife's truck while he was driving it.

Moreover, the fact that Foehl was released by the Beaumont police on bail, mentioned by the majority, did not impact in any way his ability to take steps to ensure the delivery of his mail. Nor did this non-federal "custody" give the *federal* government any special information concerning Foehl's whereabouts. Therefore, the DEA was not subject to the heightened notice requirements applicable when the claimant is in (federal) custody.

### 3. Foehl Did Not Comply with Alabama's Address—Change Requirements

Alabama law obliged Foehl to correct his address on his driver's license within thirty days of moving, which requirement is written on the back of Alabama driver's licenses. *See* Walton Decl., ¶8, Supp.App. at 67; Exhibits F, G, Supp.App. at 79–80 (copies of the Alabama Department of Public Safety rules and regulations and the driver's license in effect in 1989). The Post Office, when asked, will forward an individual's mail from the old to the new

address for longer than one month. *See, e.g.,* United States Postal Service Web Page, *http://www.usps.com/movers-net/q_and_a.html* (January 8, 2001). Foehl claims to have moved from Thompson Court to Lott Road one year before his arrest. During that period, he did not notify the Alabama authorities of his change of address in compliance with the law. Therefore, any confusion as to his proper address caused by his driver's license is of Foehl's own creation.

### C.

The majority writes that "[a]fter learning that [Foehl] did not receive the letter mailed to the Thompson Court address, the DEA, with the most minimal effort, could have obtained [his] correct address and notified him of the impending forfeiture." The majority proffers "four obvious sources: the Beaumont Township Police Department, the Jefferson County district attorney, the DEA office for Alabama, and the Alabama Driver's License Bureau." It concludes the "failure to check with any of these sources was unreasonable under the circumstances."

Because this is not a case in which Foehl was in custody during the forfeiture notice period, there is no reason to place on the forfeiting agency the burden of checking with all possible sources of Foehl's then current address. The DEA's original notice, sent to Foehl's stated address, satisfied due process. Nonetheless, I will consider briefly whether the DEA had any reason to look to the sources suggested by the majority.

1. *The Beaumont Township Police and the Alabama Driver's License Bureau*

When Foehl was arrested and the money and drugs seized by the Beaumont police in Jefferson County, Texas, his driver's license listed his Thompson Court address. This was the address the Beaumont police provided to the DEA and thus the address that the DEA used to send its notice of forfeiture. Even if,

as the majority states, Foehl "sharply contest[s]" which address he gave to the Beaumont police at the time of his arrest, there is no dispute that the Beaumont authorities sent the Thompson Court address to the DEA.

Because the Beaumont police had provided the first invalid address taken from Foehl's driver's license, the DEA had no particular reason to believe that either the Beaumont police or the Alabama Driver's License Bureau had a better one. The agency could reasonably assume that: (1) Foehl maintained an up-to-date address on his driver's license pursuant to Alabama law; (2) Foehl would otherwise have made a point to notify the police of his actual address; and (3) the Beaumont police would have included a second address had Foehl provided one. The fact that we now know in hindsight that one or more of these assumptions would have been incorrect does not make them unreasonable.

2. *The Jefferson County District Attorney*

Because the Jefferson County district attorney, like the DEA, presumably received his information on Foehl from the Beaumont police, it is unclear why the DEA would have expected the district attorney to have a more accurate address for Foehl than did the Beaumont police. Moreover, it is unclear what the district attorney, if contacted, would have told the DEA. The district attorney did have Foehl's Lott Road address as early as March 12, 1993, when he sent a Complaint of forfeiture of the truck to Lott Road. However, the receipt of service of the Complaint was not signed by Foehl or by his wife, but by "Carol Barnhill," apparently no relation. Therefore, by the time the DEA's March 29 notice of forfeiture was returned, the Jefferson County district attorney already knew Lott Road to be, at best, an uncertain address for Foehl.

3. *The DEA Office for Alabama*

The majority questions the DEA's judgment in directing its inquiry regarding

Foehl to DEA–Houston rather than to the DEA division covering Alabama, given that Foehl was from Alabama and that DEA–Houston "had no prior involvement with [Foehl's] case." However, there was no reason for the DEA forfeiture division to contact the Alabama division, which was not involved with the forfeiture at issue. In fact, DEA–Houston was the originating division for the forfeiture, according to both parties' briefs. Foehl himself appears to concede that DEA Houston was the appropriate division.[1] Therefore, the DEA's inquiry to its Houston division after its first notice to Foehl was returned constituted precisely the type of reasonable inquiry the majority suggests the DEA should have made.[2] This hardly constitutes a "glaring lack of effort," as the majority chooses to characterize it.

### D.

In conclusion, the relevant precedent requires the government to take reasonable measures to notify an interested party of impending forfeiture proceedings. The DEA's initial notice alone, and certainly when combined with its follow-up inquiry to its Houston division, satisfies this requirement. No case obliges the government to go to extraordinary lengths in its notification efforts, yet that is precisely what the majority holds is required. This conflicts with our repeated statements that the government duly is to provide notice to an individual "whose name and address are known or reasonably ascertainable." *McGlory*, 202 F.3d at 672 (quotation omitted). The majority has thus raised the level of due process beyond that ever suggested by the Supreme Court or this court, and has not provided any standard that the forfeiting agency should follow in the

1. Foehl argues that the DEA's inquiry was ineffective, not because Houston was the wrong division but because the DEA misidentified him by inquiring about "Don Foehl" or "Don Ameche Foehl," rather than "Don Ameche Foehl, Sr."

2. One additional point the majority does not address is whether the DEA would have met

next case. It is not enough for a court to say merely, "do better," yet that is what the majority has done.

Therefore, I respectfully dissent.

with success had it made one of the suggested inquiries, obtained Foehl's Lott Road address, and sent a notice there. In fact, there is no evidence that Foehl received the forfeiture notice for his wife's truck, which the Jefferson County District Attorney sent to the Lott Road address.