**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Steven DONOVAN, Defendant–Appellant.**

**United States of America, Plaintiff–Appellee,**

**v.**

**Steven Donovan, Defendant–Appellant.**

**Appeal of: Natalie Donovan**

**No. 01–2572, 01–2757.**

United States Court of Appeals, Seventh Circuit.

Submitted April 18, 2002 *.

Decided April 19, 2002.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before POSNER, EASTERBROOK, RIPPLE, Circuit Judges.

## ORDER

In these consolidated appeals, Steven Donovan and his mother, Natalie Donovan, contend that the DEA provided them constitutionally inadequate notice of administrative forfeiture proceedings commenced against their property and that the district court consequently erred in denying their motions for return of property under Federal Rule of Criminal Procedure 41(e). Because the district court correctly found that Mr. Donovan received adequate notice of the administrative proceedings and that Ms. Donovan's claim is time-barred, we affirm.

In October 1991 the DEA seized a boat, a Chevrolet, a motorcycle, and some electronic equipment (as well as other items not pertinent to this appeal) from Mr. Donovan during an investigation into his cocaine trafficking. The investigation began with information provided by Mr. Donovan's live-in girlfriend. Acting on one of her tips, the DEA's lead investigator, Special Agent Raymond Melick, further seized $610 from Mr. Donovan and $8,020 from Ms. Donovan as they exited a Wisconsin bank.

On November 5, 1991, Mr. Donovan was indicted, and after his release on bond on November 8, the DEA mailed from Washington, D.C., separate notices of its intent to forfeit the items it had seized, each addressed to Mr. Donovan's home address. The DEA sent notices for the currency and the boat on November 12 and for the remaining property on November 18. Coincidently, on November 18 Agent Melick also outfitted Mr. Donovan's girlfriend with a listening device and overheard him instructing her how to testify if called as a witness in his case. According to Agent Melick, after obtaining a warrant he arrested Mr. Donovan on November 20 for witness tampering and took him to the Milwaukee County Jail. The next day, Mr. Donovan was remanded to the custody of the United States Marshals Service and taken to the Racine County Jail, where he remained until October 1992.

Meanwhile, the post office twice unsuccessfully tried to deliver each notice, and between December 1991 and January 1992, the DEA received each back marked "unclaimed." The DEA then published each of the notices for three consecutive weeks in *USA Today* and, receiving no response, administratively forfeited the seized property to the United States in January and February, 1992. Neither the mailings nor the publications named Ms. Donovan, however, who did not reside with her son. In February 1997, more than five years after the forfeitures, Mr. Donovan unsuccessfully moved under Federal Rule of Criminal Procedure 41(e) for return of the property (but not the $610 or the $8,020). We

remanded the case for further factual development in an unpublished order, *Donovan v. United States*, 1999 WL 50847 (7th Cir.1999), and then on February 8, 1999—more than six years after the DEA forfeited the $8,020 (which the DEA had lumped with the $610 from Mr. Donovan and noticed as $8,630)—Ms. Donovan filed her own Rule 41(e) motion demanding return of the $8,020. The district court entered Ms. Donovan's motion on the docket in her son's case, and after the government and Mr. Donovan exchanged interrogatories and submitted affidavits, the district court denied both motions.

■ On appeal Mr. Donovan contends that he received constitutionally inadequate notice of the DEA's intended forfeitures in two respects. First, he argues that the notices sent to his home were not reasonably calculated to apprise him of the intended forfeitures, *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 319, 70 S.Ct. 652, 94 L.Ed. 865 (1950), because the DEA knew that his girlfriend (who could receive a reward for her cooperation, *see* 19 U.S.C. § 1619) tampered with his mail. But in the district court, Mr. Donovan did not argue the significance of his girlfriend's relationship with the government. Nor did he assert that the DEA supplied inadequate notice because it knew his girlfriend tampered with his mail. The contention therefore is not properly before us.

Second, Mr. Donovan contends that the DEA had an obligation to send notices to the Racine County Jail or to his attorney after the post office returned the DEA's mailings unclaimed. But in *Dusenbery v. United States*, 534 U.S. 161, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002), the Supreme Court recently confirmed that due process does not obligate the government to make heroic efforts to notify potential claimants who are in federal custody. *Id.* at 701. In that case, the FBI mailed notices addressed to the claimant in prison, the house where he was arrested, and the town where his mother lived. The claimant alleged that he never received the notices, but the Supreme Court held that the government did not need to ensure receipt of notice, *attempting* to ensure receipt through certified mailings to the prisoner's address was enough. *Id.*

■ Mr. Donovan's case differs from *Dusenbery* insofar as the DEA knew that it had not effectively notified Mr. Donovan (since the notices were returned) and that it could locate him in jail (since one of its agents took him into federal custody). And as Mr. Donovan points out, under our earlier decision in *Garcia v. Meza*, 235 F.3d 287 (7th Cir.2000), the government must sometimes supplement written notices that were adequate when sent, if the notices are returned. *Id.* at 291; *see also Foehl v. United States*, 238 F.3d 474, 479–80 (3d Cir.2001). But *Garcia* emphasizes a case-specific approach, 235 F.3d at 291, and the facts in that case differ from those in Mr. Donovan's case. In *Garcia* the claimants sought return of their property first by telephoning one of the agents involved in the seizure, then by suing the agents for conversion, and then by filing an administrative claim with the INS under the Federal Tort Claims Act (which the judge who dismissed their conversion case told them to do). While that case was pending, the United States Secret Service sent notices to the plaintiffs, which the post office returned. Thus, in *Garcia* the government not only knew that its attempt to deliver written notice had failed, but also that the plaintiffs were actively seeking return of their property.

■ Mr. Donovan, on the other hand, took no comparable steps signaling his desire to contest the DEA's intended forfeitures. This inaction might be explained if

Mr. Donovan did not know either that the seizures had occurred or that he would need to initiate action to reclaim his property. But on remand the district court found that within days of the seizures both Mr. Donovan's girlfriend and Agent Melick had informed Mr. Donovan that the DEA was holding his Chevrolet and motorcycle. Mr. Donovan obviously knew too that he was under indictment on drug charges, and on remand Agent Melick attested that he informed Mr. Donovan that his Chevrolet and motorcycle would be processed as drug assets and that Mr. Donovan would have to initiate measures to secure their return. In light of *Dusenbery* and Mr. Donovan's failure to take any action remotely akin to that in *Garcia*, we do not think the DEA needed to supplement its already adequate written notices.

As for Ms. Donovan, she challenges only the district court's conclusion that her Rule 41(e) motion, filed six years after the forfeiture of the $8,020, is time-barred. *See United States v. Duke,* 229 F.3d 627, 629–30 (7th Cir.2000); *United States v. Rodriguez–Aguirre,* 264 F.3d 1195, 1209–10 (10th Cir.2001) (collecting cases). But Ms. Donovan knew that the $8,020 had been seized the minute Agent Melick took it, and she also knew that her son was subsequently tried on drug charges. The forfeiture of the money was therefore a known probability to Ms. Donovan, so she can neither avoid the running of the statute of limitations nor invoke the doctrine of equitable tolling. *See Duke,* 229 F.3d at 630.

AFFIRMED.