DECISION
This matter is before the Court on TSVP 1996-1, LLC's (petitioner) Petition for Foreclosure of the Rights of Redemption. David Berkowitz, the purported heir of one of the respondents, Harold Berkowitz, (respondent) objects to the notice given for the tax sale by the Town of West Warwick.
 Facts
The facts of this case are undisputed.
The property at 12 Roberts Street, West Warwick, Rhode Island was assessed by the Town for property taxes. Carmine Gallucci, the owner of the property, failed to pay the 1996 and 1997 taxes. The Town began foreclosure procedures pursuant to section 44, chapter 9 of the Rhode Island General Laws. Prior to the auction sale, the Town (apparently unable to locate any other address for Harold Berkowitz) sent notice to Harold Berkowitz, c/o David Berkowitz, Esq., 851 Clinton Avenue, Bridgeport, Connecticut.[1] The notice was sent by certified mail and a signed receipt was mailed to the Town. Notice was also advertised in a Rhode Island newspaper. After an auction pursuant to statute, the Town Tax Collector conveyed a tax sale deed in May 1998. Eventually, this tax deed interest was acquired by petitioner. *Page 2 
When Mr. Gallucci owned the property he executed a mortgage to Harjay, Inc. securing the debt of $16,000. In December 1994, Harjay lists this mortgage to "HAROLD BERKOWITZ of Fairfield." The assignment provides no street address or other identification for Mr. Berkowitz, but was notarized by David Berkowitz.
In 2003, petitioner filed this suit to foreclose the rights of redemption, essentially acquiring full title to the parcel purchased at the 1998 tax sale. Respondent never denied that notice of the sale was received.[2]
 Analysis
David Berkowitz claims that he is the sole heir of Harold Berkowitz. He further claims that the notice of the sale was insufficient. Mr. Berkowitz does not specifically claim that the notice of this suit was insufficient.
The travel in this case is worthy of note. Petitioner filed this case to foreclose rights of redemption in 2003. It was unable to serve the respondent. According to the motion and order of May 2007, petitioner eventually learned that Harold Berkowitz passed away in 1999, and his estate had been closed. Even after a conversation with Attorney David Berkowitz, petitioner could not effectuate service. In 2007, this Court allowed special service of process via advertising in the Connecticut Post, presumably at significant cost.
David Berkowitz now claims that Harold Berkowitz failed to receive proper notice of the sale. He does so without any evidence (from himself or from his father) that notice was not received. Each of the parties reference a recent United States Supreme Court case which states:
 People must pay their taxes, and the government may hold citizens accountable for tax delinquency by taking their property. But before forcing a citizen to *Page 3 
satisfy his debt by forfeiting his property, due process requires the government to provide adequate notice of the impending taking." Jones v. Flowers, 547 U.S. 220; 126 S. Ct. 1708, 1718, 164 L. Ed. 2d 415, (2006) (citing U.S. Constitution, Amendment 14); Mennonite Board of Missions v. Adams, 462 U.S. 791, 799, 103 S. Ct. 2706, 77 L. Ed. 2d 180 (1983)
In Jones, notice of a tax sale was mailed out by the tax collector, the notices were returned undelivered, and the town did nothing to follow up. The facts in this case are distinguishable: Notice was mailed to Mr. Berkowitz and the receipt was signed. It is important, therefore, to consider the type of notice provided. The Jones case avoids setting rigid notice requirements, but the notice given in Jones was obviously insufficient:
 As noted, "[i]t is not our responsibility to prescribe the form of service that the [government] should adopt." In prior cases finding notice inadequate, we have not attempted to redraft the State's notice statute. The State can determine how to proceed in response to our conclusion that notice was inadequate here, and the States have taken a variety of approaches to the present question. . . . It suffices for present purposes that we are confident that additional reasonable steps were available for Arkansas to employ before taking Jones' property. Jones, 126 S. Ct. at 1721 (citations deleted).
While Jones provides some guidance for the type of notice required,[3] the Jones case is quite distinguishable from the case at bar. First, as Mr. Jones' address was the actual property at risk, his home was at stake, requiring a high level of due process. Here, Mr. Berkowitz had a mortgage security interest on this property in a different state — clearly not his home. Second, *Page 4 
the certified mail sent to Mr. Jones was returned as undelivered while a signed receipt was returned for Mr. Berkowitz' mailing. Finally, Mr. Berkowitz (the original mortgage assignee) had not assisted the tax collector at all — he never even listed his mailing address on the assignment of mortgage.
Several cases discuss whether sufficient notice was provided when certified mail was received. In Dusenbery v. United States, 534 U.S. 161
(2002), a prisoner had been given certified mail notice of a forfeiture. A guard signed for the mail, and the standard procedure was to then deliver the letter to the prisoner. The high court held:
 Here, the use of the mail addressed to petitioner at the penitentiary was clearly acceptable for much the same reason we have approved mailed notice in the past. Short of allowing the prisoner to go to the post office himself, the remaining portion of the delivery would necessarily depend on a system in effect within the prison itself relying on prison staff. We think the FBI's use of the system described in detail above was "reasonably calculated, under all the circumstances, to apprise [petitioner] of the action." Mullane, supra, at 314. Due process requires no more. Dusenbery, 534 U.S. at 172-73.
Senior Judge Bruce M. Selya, a highly respected member of the First Circuit Court of Appeals, recently discussed notice requirements where the government was attempting to obtain forfeiture of a boat.
 Let us be perfectly clear. Where, as here, the government does not know the name of a potential claimant, it need not take heroic measures to identify him. Cf. Jones v. Flowers, 126 S. Ct. 1708, 1719, 164 L. Ed. 2d 415 (2006) (suggesting that the government would not need to search phone records or income tax rolls to locate missing owner before proceeding with tax sale when state law required the taxpayer to keep his address updated). But when the claimant's identity may be easily ascertained through minimal effort, the government cannot eschew these efforts. See e.g. Foehl v. United States, 238 F.3d 474, 480 (3d Cir. 2001) (finding the government's attempt to provide notice insufficient when it failed to check with four "obvious sources" to ascertain the claimant's address). Here, for example, the government could at least have asked Crosby, with whom it was in contact, if he knew the names of his fellow investors, or it could have made similar inquires at Marblehead Trading (the locus from which the sloop was seized). Perhaps the government did make such inquiries — but the record is silent *Page 5 
on what steps, if any, it took. United States v. One Star Class Sloop Sailboat, 458 F.3d 16, 25
(1st Cir. 2006) (footnote omitted).
It is noteworthy that Mr. Berkowitz has, at best, a mortgage security interest (if he is truly an heir). Notice came to his law office, in his father's name, and a receipt was duly executed. Given the significant efforts to serve process, the apparent acceptance of the service of process, Mr. Berkowitz must, at the very least, establish that he failed to receive notice. More significant, he has failed to meet his burden of establishing that the notice provided was insufficient.
Further, Mr. Berkowitz has failed to establish (with evidentiary proof, not mere argument), that a telephone book search would have yielded results. He claims a telephone call should have been made to the keeper of the probate records, but failed to establish that this would have yielded results, or that such a search was reasonable under the circumstances. Finally neither Mr. Berkowitz nor his father attempted to provide an address to the West Warwick Tax Collector, or to record it in the Registry of Deeds.
As Judge Selya reasoned:
 The hard cases are those in which an interested party's name or whereabouts were not actually known to the government but may or may not have been reasonably ascertainable. In those instances, an inquiring court must look to "the practicalities and peculiarities of the case." The rule of thumb is that the government, in endeavoring to identify and locate potential claimants, must exercise a degree of diligence commensurate with the particular circumstances — but it need not undertake endless or impractical investigations in the hope of finding a needle in a haystack. One Star Class Sloop Sailboat, 458 F.3d at 24 (internal citations omitted).
 Conclusion
Here, the government and the litigants exercised a degree of diligence commensurate with the circumstances. Notice to Mr. Berkowitz of the tax sale was sufficient and this action to foreclose the rights of redemption is appropriate. *Page 6 
Plaintiff's motion to set the terms of the redemption is granted. Respondent shall have up to and including March 19, 2008 to redeem, in accordance with the terms set forth in its motion of July 26, 2007.[4]
[1] The Town had used the same address for Mr. Berkowitz when it conducted a previous tax sale on the property.
[2] Petitioner has submitted an affidavit establishing that Mr. Berkowitz's office actually received the certified mail notice. Respondent objects to the affidavit in his memorandum. This motion was scheduled for hearing and the Court provided each of the parties an opportunity to present witnesses and evidence. They each relied on the facts agreed in the memoranda.
[3] "Other reasonable followup measures, directed at the possibility that Jones had moved as well as that he had simply not retrieved the certified letter, would have been to post notice on the front door, or to address otherwise undeliverable mail to `occupant.' Most States that explicitly outline additional procedures in their tax sale statutes require just such steps. . . . Either approach would increase the likelihood that the owner would be notified that he was about to lose his property, given the failure of a letter deliverable only to the owner in person. That is clear in the case of an owner who still resided at the premises. It is also true in the case of an owner who has moved: Occupants who might disregard a certified mail slip not addressed to them are less likely to ignore posted notice, and a letter addressed to them (even as `occupant') might be opened and read. In either case, there is a significant chance the occupants will alert the owner, if only because a change in ownership could well affect their own occupancy. In fact, Jones first learned of the State's effort to sell his house when he was alerted by one of the occupants — his daughter — after she was served with an unlawful detainer notice.
Jones believes that the Commissioner should have searched for his new address in the Little Rock phonebook and other government records such as income tax rolls. We do not believe the government was required to go this far." Jones, 126 S. Ct. at 1719.
[4] It is the Court's understanding that Mr. Berkowitz contests the validity of the tax sale, not the terms of redemption. If the terms of redemption are in issue, Mr. Berkowitz is instructed to return to the Court forthwith. Failing to schedule this matter for consideration prior to March 12, 2008 will constitute an acknowledgement by Mr. Berkowitz that the terms set forth in the letter of July 26, 2007 are correct. *Page 1